IRWIN v. HASSELMAN et al.

(Circuit Court of Appeals, Seventh Circuit. November 3, 1899.)

No. 519.

1. PATENTS—PATENTABLE INVENTION.
   There may be invention in applying a device which is either old or simple in a new way so as to accomplish a new result, and in cases of that class doubt on the question of patentability may be resolved in favor of the patent on proof of utility and popular acceptance.

**2. SAME—CONSTRUCTION OF CLAIMS—ESTOPPEL BY PROCEEDINGS IN PATENT OFFICE.**

Where an applicant acquiesces in the rejection by the patent office on the ground of anticipation of a claim covering one feature of his invention, and files a substituted claim, on which a patent is granted, he is thereby estopped from claiming as covered by such patent the particular feature rejected, although he did not change his specification which shows such feature, and it is included as one of the elements of the substituted claim.

**3. SAME—INFRINGEMENT—IMPROVEMENT IN BOOKBINDING.**

Claim 1 of the Ryan patent, No. 379,334, for improvements in bookbinding, construed, and *held* not infringed.

Appeal from the Circuit Court of the United States for the District of Indiana.

This appeal is a decree of dismissal entered on final hearing of a bill in equity for alleged infringement of letters patent No. 379,334, for "improvements in bookbinding," issued to Michael Ryan, March 13, 1888, and assigned to the appellant. 86 Fed. 642.

The drawings, specifications, and claims are set forth in the patent as follows:

*Fig. 1.*

*Fig. 2.*

*Fig. 3.*

"Fig. 1 is a perspective view of an open book in which my device is used. Fig. 2 is a perspective view of a sheet forming two leaves, showing a modification of same. Fig. 3 is a sectional view showing the bunch, C, attached to the flexible back, B, and a leaf of the bunch turned over upon the other half. A, A, are the covers, B the flexible back, C a section or bunch of sheets bound to the back at b. C′ and C² are the two leaves formed by the middle sheet of the section. c′ are perforations in the leaf C′. c² is the line of stitching by which the leaf C² is united to the remainder of that half of the bunch, C, lying beneath it. D, Fig. 2 is a sheet forming two leaves which have been folded to form the creases, d, d. The object of my invention is to provide a method of binding books, particularly blank books and books of record and reference, in such a manner that when a book shall be opened at any point the leaves may fall and lie substantially flat, and the pages thus exposed present, as nearly as possible, a level surface for convenience in writing and ruling thereon. This object I accomplish by forming a hinge-joint in the leaf at a line parallel to and a short distance from the binding (which distance would vary according to the size of the book and weight of the paper), either by a crease made by folding, as shown in Fig. 2, by perforations a short distance apart along the line, as shown in the leaf C′, in Fig. 1, which will render the leaf flexible at that point, or by fastening several leaves together at such line by stitching, as shown in the leaf C², Fig. 1, or otherwise. In the latter case I prefer to fasten together the leaves of each half of each bunch or section before binding, leaving the bunch open at its fold, so that it can be stitched to the back in the ordinary manner of binding. The whole number of leaves in the bunch may be thus stitched together, and the bunch bound into the back by gluing, or some such method; but I prefer the method explained above. This device would commonly be used in a book having a flexible back as shown in the drawings, but its use would not be limited to such a binding. I am aware that this object has been sought to be accomplished by attaching the leaves—commonly by stitching—to stubs, which are then bound to the back, a hinge-joint being formed at the line of such jointure. Such a method, however, greatly increases the labor and cost of binding, and there is also great danger in such a book that the leaves, being stitched along the line of their fold, will be cut by the thread, and so easily tear away from the stubs. In my device the folding, perforating, or stitching is rapidly done, there being nothing to handle except the one leaf or bunch of leaves, whereas in the method referred to there are both the leaves and stubs to handle and adjust to each other; also the leaves themselves are bound directly to the back, where they may be secured as strongly as necessary. I claim: (1) A book composed of sections or bunches of a small number of leaves, in which each section is secured to the back separately, and thereby flexibly thereon, independently of the others, and in which the leaves are rendered flexible at a line parallel to and at a sufficient distance from the back to allow each to lie flat upon the others when open, substantially as set forth. (2) A book composed of sections or bunches of a small number of leaves, in which the leaves comprising each half of each section are united by a row of short stitches, and thereby perforated and rendered flexible at a line parallel to and a sufficient distance from the back to allow each to lie flat upon the others when open, substantially as set forth. (3) A book composed of sections or bunches of leaves, in which each section is secured to the back separately, and thereby flexibly thereon, independently of the others, and in which the leaves comprising each half of each section are united by a row of short stitches, and thereby rendered flexible at a line parallel to and a sufficient distance from the back to allow each to lie flat upon the others when open, substantially as set forth."

The charge of infringement is founded alone upon the first claim of the patent, and the construction of the appellees' device in question, as shown by the testimony, is thus described in their answer to the bill: "A folded sheet of paper is taken and again folded parallel and near to the original fold thereof, at a point a short distance therefrom, backward and forward, thus breaking the fibre of the paper, and thereby rendering each sheet flexible at a point parallel to, and a short distance from the original fold. A series of such sheets are then placed together, one inside of the other, thereby forming a section. A series of these sections are then placed together, so as to form a book, and

the said sections are sewed continuously together upon a series of tapes or strips of parchment, which extend transversely across the back of the series of sections, thus forming the book of leaves, which book is afterwards bound into the covers in the usual manner."

The file wrapper and contents in the matter of this patent, produced from the patent office, show the following proceedings: In the application, as originally presented, the claims read: "(1) A book having leaves rendered flexible at a line parallel to and a short distance from the back, substantially as and for the purpose set forth. (2) A book having leaves perforated at a line parallel to and a short distance from the back, substantially as and for the purpose set forth. (3) A book whose sections or bunches are composed of a small number of leaves fastened together at a line parallel to and a short distance from the back, substantially as and for the purpose set forth. (4) A book in which the leaves composing each half of each section or bunch are stitched together along a line parallel to and a short distance back, whereby they are both perforated and fastened to facilitate folding, substantially as set forth."

The patent office ruled against all such claims as follows:

"Claims 1 and 2 are anticipated by the patents of Hopkins, 228,637, June 8, 1880; also by Edwards, 182,650, Sept. 26, 1876. Claim 3 is met by the Edwards patent cited; likewise by Beck, 185,066, Dec. 5, 1876. Claim 4 by Beck cited, & by Burwell, 285,794, Oct. 2, 1883. All references in 'Book & Covers.' As the matter stands, a patent must be refused.

"Wm. Burke, Ex.　　　　　　　　　　　　　E. R. Williams, 2nd Ass't."

Thereupon the applicant submitted an amendment, striking out the four claims which were rejected, and substituting the three claims as they now appear, thus procuring allowance of his application in such form and issue of the patent.

Paul Bakewell, for appellant.

Before JENKINS and GROSSCUP, Circuit Judges, and SEAMAN, District Judge.

SEAMAN, District Judge, after the foregoing statement, delivered the opinion of the court.

An inspection of the several forms of record books which appear as exhibits in this case demonstrates the utility of that feature of the patent device by which "the leaves of the book are creased and rendered flexible at a line parallel to and a short distance from the back." It produces a book whereof, in the language of the specifications, the leaves, when open, will "fall and lie substantially flat, and the pages thus exposed present, as nearly as possible, a level surface for convenience in writing and ruling thereon." By this improvement the well-recognized defect of bulging leaves in the common form of large blank books, affecting both convenient use and durability, is obviated, and its value is manifest in such books required for records, accounts, and like uses. As the specifications further state, this object is accomplished "by forming a hinge-joint in the leaf at a line parallel to and a short distance from the binding," and three several methods of producing such joint in the leaf are there described, corresponding to the different forms stated as one element, respectively, in the claims allowed, one being "by a crease made by folding as shown in Fig. 2," which enters into the first claim of the patent. The appellant produced two record books as exhibits, of which he testifies that one is constructed in accordance with claim 1 of the patent, and the other "an ordinary record book, showing the old method of binding," and "that the only difference in the construction of the two books is in

the creased leaves of the Ryan patent." And the testimony is clear and uncontroverted that the books made by the appellee of which infringement is alleged are in every particular constructed in old and well-known methods, except that the leaves are creased as described in the first claim of this patent. This feature of the so-called "hinge-joint" in the leaf, which appears in each of the several forms specified in the patent, constituted the sole element of each of the claims presented in the original application; and the first claim there made unmistakably states as a single element this form of a fold or crease in the leaf on which the alleged infringement by the appellees must rest. That claim reads: "(1) A book having leaves rendered flexible at a line parallel to and a short distance from the back, substantially as and for the purposes set forth." Had the patent been allowed on such claim, infringement would stand confessed by the answer, and the question of patentable novelty upon the showing of the prior art would alone remain for consideration; and on that inquiry the test of invention would not be of simplicity alone in the device, nor in the fact that like means may appear as an element in prior devices where the use is not analogous. There may be invention in applying a device which is either simple or old where it is used in a new way, and accomplishes a new result; and the rule is well settled in cases of that class that doubt on the question of patentable novelty may be resolved in favor of the patent on such proof of utility and popular acceptance as shown in this record. Loom Co. v. Higgins, 105 U. S. 580, 591; Topliff v. Topliff, 145 U. S. 156, 163, 12 Sup. Ct. 825; Krementz v. S. Cottle Co., 148 U. S., 556, 560, 13 Sup. Ct. 719. The patent office, however, ruled upon the original application that each claim presented was anticipated by prior patents named, and that "claims 1 and 2 are anticipated by the patents of Hopkins, 228,637, June 8, 1880; also by Edwards, 182,650, Sept. 26, 1876"; and a patent was refused. As the applicant thereupon submitted his amended claims without change in the specifications, and accepted the patent on the substituted claims, his acquiescence in the ruling forecloses any claim of invention in the rejected feature, through the well-established doctrine of estoppel which then applies. Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 429, 14 Sup. Ct. 627, and cases cited; Richards v. Elevator Co., 159 U. S. 477, 486, 16 Sup. Ct. 53. The ruling so made is not now open to question by the patentee, or by the appellant claiming under him, and there can be no inquiry here whether this rejected claim was in fact anticipated by the prior patents referred to, or whether, aside from the ruling, invention would appear in the device. The device of creased leaves appears as one of the elements in the substituted first claim on which the patent was granted; but, considered alone, it is, nevertheless, subject to the conclusive presumption thus created of want of novelty, and is open to the public for use with old methods of binding, or in any association not pre-empted by valid patent. According to the undisputed testimony, this single element was used by the appellee in books which were in all other respects of old and well-known construction, and it is therefore unnecessary to determine what effect must be given to the additional element inserted in the claim, namely, "a book composed

of sections or bunches of a small number of leaves in which each section is secured to the back separately, and thereby flexibly thereon, independently of the others." If the element thus inserted describes a new method of binding, it is clear that the book made by the appellee in the old method is no infringement. If the description is substantially identical with the pre-existing method, no force is imparted to the claim by this amendment. In either view the suit was properly dismissed for want of equity, and the decree accordingly is affirmed.

GROSSCUP, Circuit Judge, sat at the hearing, but, by reason of illness, took no part in the decision of the appeal.