MORTON v. LLEWELLYN et al.

(Circuit Court of Appeals, Ninth Circuit. October 19, 1908.)

No. 1,548.

1. PATENTS (§ 311*)—SUIT FOR INFRINGEMENT—DEFENSES—PLEADING.

The defendant in a suit for infringement of a patent must give notice in his answer of any defense by way of prior patents, publications, or public use relied on to show want of novelty or invention, otherwise such evidence is receivable only to show the state of the art, and to aid in the proper construction of the patent in suit.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 522, 529, 530; Dec. Dig. § 311.*]

2. PATENTS (§ 36*)—EVIDENCE OF INVENTION—SUCCESS OF DEVICE.

Apart from the presumption of novelty arising from the grant of a patent, where it is shown that the patented device has gone into general use and has superseded prior devices having the same purpose, it is sufficient evidence of invention in a doubtful case.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 40; Dec. Dig. § 36.*

Utility, extent of use, and commercial success as evidence of invention, see note to Doig v. Morgan Mach. Co., 59 C. C. A. 620.]

3. PATENTS (§ 328*)—INFRINGEMENT—DRAINAGE PIPE FITTINGS.

The Walker patents, No. 635,619 and No. 788,803, for soil pipe drainage and venting fittings, held valid as disclosing novelty and invention, but not infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Southern Division of the Southern District of California.

George E. Harpham, for appellant.
Frederick S. Lyon, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This suit was brought by the appellees against the appellant for the alleged infringement of two certain letters patent, the first No. 635,619, issued October 24, 1899, for a combination soil pipe drainage and venting fitting, and the other, No. 788,803, issued May 2, 1905, for a sanitary drainage and vent fitting, to the appellee Walker, who thereafter assigned one-half of his inter-

est therein to his co-appellee, Llewellyn. In answering the bill of complaint, the appellant, who was the defendant below, alleged, among other things:

"That the pretended improvement and new discovery of fittings as set out in said complaint, and as mentioned in said letters patent therein referred to, was not new when produced by said plaintiff, but was known and previously patented and described in printed publication prior to the alleged invention thereof by the said plaintiffs; that is to say, the said fittings were patented previously in and by the following letters patent of the United States of America: No. 577,793, A. C. Stewart, February 23, 1897. And said letters patent referred to and said fittings were previously patented by said A. C. Stewart in the United States in the year 1885, the exact date of which is unknown to the defendant, but which he prays to leave to insert upon being informed of the date. Defendant, further answering, avers that he is informed and believes that the said A. C. Stewart and a number of other persons whose names are unknown to the plaintiff had previous knowledge for more than two years of substantially the same fittings patented by the said plaintiffs prior to the alleged discovery and invention thereof by said plaintiff, and that defendant himself used substantially the thing patented in the county of Los Angeles, state of California, and elsewhere, previous to the issuing of the letters patent to said plaintiffs; and aver, on information and belief, that an apparatus substantially identical with the fittings alleged to be * * * invented by said plaintiff was known and generally used throughout the country for more than two years previous to the application for the letters patent referred to in plaintiffs' complaint, and that said improvements were known and used by others in this country for more than two years, and were described in other printed publications in this and other countries for more than two years prior to the alleged invention thereof by said plaintiff, the names and residences of said certain other persons having such prior knowledge and making such prior use are at present unknown to the defendant, and therefore prays your honors that, so soon as they may reasonably obtain information sufficient to set forth those matters in detail, they may be permitted to do so, by amended answer or otherwise, as to your honors shall seem meet."

The law is well settled that the defendant to a suit for infringement must give notice in his answer of any defense by way of prior patents, publications, or public use, if he desires to prove any of such defenses to show want of novelty or invention in the patent sued on. Otherwise such defenses are receivable in evidence only to show the state of the art, and to aid in the proper construction of the patent. Grier v. Wilt, 120 U. S. 412, 7 Sup. Ct. 718, 30 L. Ed. 712; Vance v. Campbell, 1 Black, 427, 430, 17 L. Ed. 168; Railroad v. Du Bois, 12 Wall. 47, 65, 20 L. Ed. 265; Brown v. Piper, 91 U. S. 37, 41, 23 L. Ed. 200; Eachus v. Broomall, 115 U. S. 420, 434, 6 Sup. Ct. 229, 29 L. Ed. 419. The only anticipating patent, printed publication, or device set up in the answer is that issued to Stewart, which in the brief of the appellant is not relied upon at all, but it is there contended that certain exhibits, numbered 1 and 2, and concerning which some of the defendant's witnesses were questioned, show that a similar device to that of Walker was in general use 16 and more years prior to his patents.

The purpose of the fitting covered by the first Walker patent was thus described by the patentee:

"One object of my invention is to provide a fitting for use in drainage and venting plumbing of buildings which will combine in one piece means for attaching to the discharge-fitting of the basin, bath, or other fixture to be

drained, and means for venting such drainage pipe into a main venting-line adapted to vent connections at a lower point thereon.

"Another object of my invention is to provide a drainage and venting fitting which will discharge the liquids from the basin, bath, or other fixture downwardly into the drainage or soil pipe to prevent such water from splashing or from damming against an opposite incoming stream where two streams enter from opposite sides of the pipe.

"Another object of my invention is to provide means whereby two parallel lines of pipe, one of which is used as a soil or drainage pipe and the other one used as a vent pipe, may be joined in an inexpensive manner, so that the soil pipe is vented into the vent-pipe without danger of the drainage flowing over the basin or other fixture onto the floor. I accomplish this by having the upper end of my venting duct terminate and connect with the vent pipe at a point on a level intermediate the top and bottom of the basin or other fixture. Should there be any backflow of water from a stoppage of the drain pipe, it will run out into the vent pipe before rising to the top of basin or other fixture and will show water in the bottom of basin at the same time, which would indicate a stoppage of drain pipe. While I consider this construction preferable, it is to be understood that I do not limit myself to such proportions, but may make the fitting of any length.

"My fitting comprises a soil pipe member straight throughout, a vent pipe member straight throughout parallel with the soil pipe member, and a drainage receiving and venting duct connecting the lower portion of the soil pipe member and the upper portion of the vent pipe member.

"My invention also includes a drainage and venting fitting comprising a soil pipe member, a vent pipe member connected therewith, and a deflector arranged to discharge the drainage downwardly into the soil pipe member."

The subsequent specifications were followed by these claims:

"1. An integral drainage and venting fitting comprising two substantially parallel members open throughout and each adapted at each end to connect with upper and lower pipes, and a connecting member substantially parallel with the said first-named members and opening from the one member at one end of the fitting and into the other member at the other end of the fitting.

"2. A drainage and venting fitting comprising a soil pipe member straight throughout; a vent pipe member straight throughout and parallel with the soil pipe member; a drainage receiving and venting duct connecting at its lower end with the lower part of the soil pipe member and at its upper end with the upper part of the vent pipe member and also provided near its lower end with lateral openings to receive the drainage.

"3. A drainage and venting fitting comprising a soil pipe member; a vent pipe member connected therewith; a lateral drainage discharge arranged to discharge into the drainage and vent pipe member, and an inclined deflector arranged inside of the drainage and vent pipe member above and over the lateral drainage discharge to direct the water downwardly.

"4. A drainage and venting fitting comprising a soil pipe member straight throughout; a vent pipe member straight throughout parallel with the soil pipe member; a vent and drainage duct connecting the soil pipe member and the vent pipe; a lateral drainage discharge arranged to discharge into the vent and drainage duct; and an inclined deflector arranged inside of the drainage and vent duct above and over the lateral drainage discharge to direct the water downwardly.

"5. A drainage and venting pipe provided in its length with an enlargement; a lateral drainage-receiving opening or openings in the enlargement; and inclined deflectors projecting out from the wall of the enlargement over such openings, the lower ends of said deflectors extending out beyond the inner wall of the pipe, whereby the incoming stream has a free outlet and is directed downwardly into the pipe, substantially as described."

In the appellees' patent No. 788,803 the purpose of the sanitary drainage and vent fitting was thus stated by the patentee:

"This invention relates to a fitting adapted particularly for use in connection with soil pipes, drainage stacks, or standpipes and vents therefor.

"The main object of the present invention is to provide a fitting for this purpose of extreme compactness, strength, and cheapness.

"A special object of the invention in this connection is to provide a fitting that is sufficiently compact to be wholly inclosed within the wall or floor structure and will not project into the room.

"A further object of the invention is to provide a fitting of this character with means for preventing a condition of suction therein.

"When drainage connections are applied to several superimposed floors, it sometimes happens that a simultaneous flush or run-off from several floors will cause a congestion within the fittings in one or more of the lower floors and consequent suction effect therein, with the result that one or more of the closets on the lower floors will be siphoned off. The present invention prevents such objectionable action by providing in each fitting means for access of air to the interior thereof in such manner as to break any vacuum that tends to form."

Following the specifications in this second patent are the following claims:

"1. A double drainage fitting consisting of a soil pipe section having a central chamber with lateral downwardly-curved inlet branches, the upper side of said branches terminating inside the chamber in deflectors at a point which is lower than the center of the inlets of the drainage branches.

"2. A drainage and ventilating fitting comprising a tubular body with a main chamber provided with lateral drainage branches extending thereinto, deflectors extending downwardly from the respective lateral branches into the main chamber, and a vent chamber communicating with the main chamber below the deflectors.

"3. A drainage and ventilating fitting comprising a main chamber with inlet and outlet branches at top and bottom, lateral drainage branches extending obliquely downward thereinto at each side, a vent chamber extending obliquely upward from the main chamber, and opening into each of the drainage branches.

"4. A drainage and ventilating fitting comprising a main chamber with inlet and outlet branches at top and bottom, lateral drainage branches extending obliquely downward thereinto at each side, a vent chamber extending obliquely upward from the main chamber and opening into each of the drainage branches, said vent chamber flaring upwards and communicating with the main chamber through an' upwardly-flaring opening.

"5. A drainage and ventilating fitting comprising a main chamber having inlet and outlet portions at top and bottom, curved drainage branches leading obliquely downward into said drainage chamber, the upper walls of the branches terminating in deflectors extending obliquely inward and downward from the drainage branches into the main chamber, and a vent chamber opening into the main chamber below said deflectors and extending obliquely upward.

"6. A double drainage fitting consisting of a soil pipe section having a main chamber having inlet and outlet portions at top and bottom, curved drainage branches leading obliquely downward into said drainage chamber, the upper walls of the branches terminating in deflectors extending obliquely inward and downward from the drainage branches into the main chamber, and a vent pipe opening into the main chamber between said deflectors.

"7. A double drainage fitting consisting of a soil pipe section having a central chamber with lateral downwardly-curving inlet branches, the upper side of said branches terminating inside the chamber in deflectors at a point which is lower than the center of the inlets of the drainage branches and a hub extending outwardly from the fitting for the purpose stated.

"8. A drainage and ventilating fitting comprising a main chamber with inlet and outlet branches· at top and bottom, lateral drainage branches extending obliquely downward thereinto at each side, a vent chamber extending obliquely upward from the main chamber, and opening into each of the

drainage branches and a hub extending outwardly from the fitting for the purpose stated."

The patentee testified that he manufactured and sold fittings embodying the construction set forth in each of his patents, exhibits of which he produced and introduced in evidence, and that he had already sold in the aggregate about $30,000 worth of the fittings, and in answer to a question as to the extent that the fittings made by him embodying the construction set forth in letters patent No. 635,619 had been used, answered:

"They have been used quite extensively, and have superseded the old style double fittings. I am also sending them up to Portland, Victoria, San Francisco, and San Jose."

We find no contradiction of this testimony in the record. Apart from the presumption of novelty that always attends the grant of a patent, the law is that where it is shown that a patented device has gone into general use, and has superseded prior devices having the same purpose, it is sufficient evidence of invention in a doubtful case. The Barbed Wire Patent, 143 U. S. 275, 292, 12 Sup. Ct. 443, 36 L. Ed. 154; Keystone Manufacturing Company v. Adams, 151 U. S. 139, 143, 14 Sup. Ct. 295, 38 L. Ed. 103; Irwin v. Hasselman, 97 Fed. 964, 38 C. C. A. 587; Wilkins Shoe Button Co. v. Webb (C. C.) 89 Fed. 982; National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 Fed. 693, 707, 45 C. C. A. 544.

In the light of these rules of law, and of the foregoing facts, we are to consider Exhibits 1 and 2, relied on by the appellant as showing the state of the art at the time the patents in question were granted to Walker. A careful comparison of those exhibits with the patented fittings satisfies us that the only elements of novelty in the latter are the inclined deflectors within the drainage pipe and vent, and the enlargement of the latter, neither of which elements do we find in the appellant's fitting. The latter, with the exception of a change of angles and a shortening of the arms, is exactly similar to Exhibits 1 and 2. It may be, and probably is, true that the deflectors and enlargement of the appellees' fittings and their compactness makes them more desirable, and no doubt accounts for the favor they are shown to meet in the markets; but that circumstance is unimportant since, in our opinion, the appellant is not shown to have infringed. While, therefore, we think the court below was right in sustaining the validity of the patents sued on, we must reverse its judgment for want of infringement.

The judgment is reversed, and the cause remanded to the court below, with directions to dismiss the bill at complainant's cost.