## YATES v. SMITH et al.

(District Court, D. New Jersey. May 15, 1920.)

1. Patents ⬤167(2)—Claims cannot be expanded by specification.

While the specification may be referred to for the purpose of better understanding the meaning of claims or of limiting them, it can never be made available to expand the claims.

2. Patents ⬤73—Invention does not date from conception.

An invention does not date from the conception in the mind of the inventor, nor from unsuccessful experiments abandoned by him; but he must represent it in some physical form or impart his conception to another.

3. Patents ⬤289—Suit for infringement brought within statutory limitations usually not dismissed for laches.

Only under very special circumstances should the court hold one chargeable with laches whose litigation was instituted within the statutory limitation, which in patent cases is six years.

4. Patents ⬤289—Knowledge for 10 years of infringement bars suit.

A complainant *held* barred by laches from maintaining a suit for infringement, where both he and the patentee, his assignor, had knowledge of the claimed infringement ten years before the commencement of suit and that defendant was during such time building up a trade in the alleged infringing article and claiming the invalidity of complainant's patent.

In Equity. Suit by John W. Yates against Frank F. Smith and another. Decree for defendants.

Decree affirmed 271 Fed. 33.

Samuel E. Darby, of New York City, for plaintiff.
Stephen J. Cox, of New York City, for defendants.

DAVIS, District Judge. The plaintiff in the above-stated cause is seeking an injunction, together with an accounting of profits and damages, based upon alleged infringement of plaintiff's patent No. 897,449, issued on September 1, 1908, to Frederick Bogenberger, and by him assigned to the plaintiff.

The invention of the patent in suit relates to sash-pivot mechanism used in connection with pivoted fireproof metal windows that are designed to be swung about a pivot in opening and closing, as distinguished from windows that are raised and lowered to accomplish that purpose. The object of the patent as disclosed in the specifications is to provide a sash-pivoting mechanism, which is limited in its movement and which closes automatically when released, so as to cut off draft through the building, including means for adjusting the pivotal con-

nection of the sash, so that no manner of warping, expansion, or contraction will hold the sash in open position when it is desired to have it closed. The object of the patent also provides means whereby the limitation to the movement of the sash-pivoting mechanism may be rendered inoperative, so as to permit the window to be swung open to a greater degree for washing or any other purpose.

The patent has two claims, both of which the complainant alleges have been infringed. They are:

"1. A sash-pivoting device comprising a sash plate member secured to the frame of the sash, a supporting member adjustably secured to the stile of the frame, a pivot bolt secured to one of said members and having pivotal connection with the other member, a limiting stud on the supporting member, and a pawl carried by the sash-supporting member adapted to engage said stud to determine the movement of the sash.

"2. A sash-pivoting device comprising a sash plate secured to the frame of the sash, an arm adjustably secured to the stile of the frame, a pivot bolt secured to the arm and having pivotal connection with the plate, a limiting stud on the arm, and a pawl carried by the plate adapted to engage said stud to determine the movement of the sash."

The defendant denies infringement. In his brief he says:

"It will be noted that neither a gravity pawl or stop or an automatic pawl or stop is claimed, and that the improvement consisting of an arm or supporting member adjustably secured to the stile of the frame, and the limiting stud on the arm or supporting member is claimed in combination with the other old and well-known parts of the device. This, therefore, is the specific thing claimed by Bogenberger as his invention and monopoly, and by specifying it he disclaimed all other things set forth in the patent, and conceded them to be public property."

[1] It is true that Bogenberger does not specifically claim a gravity or automatic pawl or stop as does Smith in his "gravity latch piece." Does "a pawl carried by the plate adapted to engage said stud to determine the movement of the sash" mean a gravity pawl? The claims are the measure of the patentee's right to relief, and while the specification may be referred to for the purpose of limiting the claims, it can never be made available to expand them. McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800. Though the context may not be referred to for the purpose of changing a claim and making it different from what it is, yet it may be referred to, and often is, for the purpose of better understanding the meaning of a claim. White v. Dunbar, 119 U. S. 47, 7 Sup. Ct. 72, 30 L. Ed. 303. In the specification the patentee said:

"The thumb piece (No. *19* on the pawl) is arranged so that the weighted end of the limiting pawl cannot be tilted past the center, because the thumb piece engages the sash when pressed back and when released it will drop by gravity upon the upper surface of the arm *6*."

The claims state that the pawl is "adapted to engage said stud to determine the movement of the sash." The claim does not specify in what way the pawl is "adapted to engage the stud to determine the movement," but the specification does show that "the flange, *14*, is provided * * * with a pivot pin, *16*, upon which is carried a limiting pawl, *17*, having a weighted outer end, *18*," and after being pressed

back, "when released it will drop by gravity upon the upper surface of the arm, *6*." The weighted outer end of the pawl, *18*, in Fig. 3 indicates that it drops by gravity upon the upper surface of the arm, *6*, and is thus adapted to engage the stud on the arm to determine the movement of the sash. In his brief, counsel for defendant says: •

"Pawls may act by gravity, by spring pressure, by mechanical movement, or by hand."

There is nothing anywhere in the specification to indicate that the pawl in this case acts in any other way or by any other method than gravity, and the context, to which we may resort for better understanding the claim, forces the conclusion that this is a gravity acting pawl.

The construction and operation of the Bogenberger patent and the Smith patent, No. 970,656, issued September 20, 1910, are practically identical, except in one particular; the means for adjusting the sash in relation to the frame. In pointing out the identity of the Smith and Bogenberger devices, counsel for complainant says:

"The only difference between the structures in this respect being that the adjusting means in Smith is on the sash, whereas in the Bogenberger patent it is shown on the frame. The same result is accomplished however and in the same manner; that is, by making one member of the pivot mechanism adjustable with respect to the other member. It is contended that this slight difference is not sufficient to avoid infringement."

The complainant is entitled to invoke the law of mechanical equivalence and a mere change of location of the adjustable means from the frame to the sash would ordinarily not avoid infringement and would be of no consequence. The defendant, however, contends that the complainant is estopped from invoking that law by the limitation accepted by Bogenberger in the Patent Office. The file wrapper shows that claims originally filed as 1 and 2 were "rejected as not distinguishing from either Ryan or Patterson." The rejected claims are as follows:

"1. A sash-pivoting device comprising a sash plate, an arm mounted on the frame, means to pivot the plate to the arm, and means carried by the plate for limiting its movement.

"2. A sash-pivoting device comprising a sash plate secured to the frame of the sash, an arm secured to the stile of the frame, means to pivotally connect the plate to the arm, a limiting device upon the arm, and means carried by the plate to engage said limiting device for determining the movement of the sash."

The Patterson patent showed a pivot with an adjustment on the sash and not on the frame, and Bogenberger limited his structure to one having an adjustment on the frame in order to distinguish it from the Patterson patent. It is a question, therefore, whether or not the complainant is not bound by the apparent limitation. Shepard v. Carrigan, 116 U. S. 593, 6 Sup. Ct. 493, 29 L. Ed. 723; Roemer v. Peddie, 132 U. S. 313, 10 Sup. Ct. 98, 33 L. Ed. 382; Royer v. Coupe, 146 U. S. 524, 13 Sup. Ct. 166, 36 L. Ed. 1073. Bogenberger's intention thus to limit his claims seems to be disclosed in his first pivots.

The earliest date on which Bogenberger can lay claim to have had a definite conception of his invention, it seems to me, is June 28, 1907. On that day he wrote a letter to his attorney and said:

"I am again to-day inclosing you a sketch and description of another invention of mine. It is a little attachment to pivot for fireproof windows."

On the back of this letter there is the purported description. The original letter and description were not found among the papers or in the files of the attorney. The purported carbon copies of the letter and description written on the reverse sides of a sheet of correspondence paper of the Consolidated Sheet Metal Works are all the documentary evidence that we have to establish the definite conception of the invention at that definite date. The defendant charges that the description was written at a later date and that the letter did not refer to it. It is not absolutely clear to me that his "little attachment to pivots for fireproof windows," referred to in the letter, was identically the device which is the subject of the application, filed April 16, 1908, for patent No. 897,449. Smith claims to have produced an automatic gravity stop in January, 1907. It appears that John C. McClure, a pattern maker, was engaged to make a pattern embodying this device and in McClure's daybook under date of January 15, 1907, there is a record made of four hours' work on the pattern.

On the following day, there is an entry for two hours' work on alterations suggested by Smith. This stop had a gravity acting pawl in the form of a hook and was placed upon the market and distributed shortly thereafter, March or April, 1907. A number of samples of that device mounted on sections of metal windows were sent, it is claimed, to various business firms and photographs of the completed device were sent to the trade generally. On or about April 5, 1907, Mr. Smith explained his automatic gravity stop to his attorney, Frederick F. Scheutz, Esq., who made entries in his record book of those facts at that time, and further Smith claims, though it is denied by Bogenberger, to have sent a sample of this automatic gravity stop to the Bogenbergers in March, 1907, and a sample of the improved form in August of that year, and in October following a catalogue from Smith, giving full detailed illustrations and descriptions of the original form.

The description of the original or hook form of automatic gravity stop in Smith's application of May 23, 1907, amounts to a reduction to practice. Automatic Weighing Machine Co. v. Pneumatic Scale Corp., 166 Fed. 288, 92 C. C. A. 206, and this is prior to the date of the invention by Bogenberger. But Smith did not plead this in anticipation of said patent, and the evidence concerning it may be received and considered only to show the state of the art and to aid in the proper construction of the patent in suit. Morton v. Llewellyn, 164 Fed. 693, 90 C. C. A. 514.

[2] The date of the invention of Bogenberger depends largely on memory. Shortly after the Consolidated Sheet Metal Works moved to 661 Hubbard street, Milwaukee, Bogenberger began experimenting, but the date of the moving alleged to be on or about January 1, 1907, depends upon memory; it not being shown by any records. The memory of Mr. Fred Bogenberger, the patentee and chief witness for complainant, as to the date of the invention, was found to be quite inaccurate when tested by records in other matters. It was, according to Bogen-

berger, in October, 1907, when a window containing a stop was completed and sent to the laboratory of the underwriters. This stop was unsatisfactory to the underwriters, who refused to approve it and returned it in January, 1908. In fact, the efforts of Bogenberger during 1907 seem to have been experimental, and it was not until 1908 that he made the pivot which subsequently went into use. An invention does not date from the conception in the mind of the inventor nor from unsuccessful experiments abandoned by the inventor. He must represent it in some physical form or impart his conception to another. Clark Thread Co. v. Willimantic Linen Co., 140 U. S. 481, 11 Sup. Ct. 846, 35 L. Ed. 521; Walker on Patents, § 70, 5th edition.

The plaintiff has the burden to bear and he should establish anticipation by some "concrete, visible, contemporaneous proofs, speaking for themselves," such as book entries, illustrations, purchases, bills, orders, and patterns. Emerson & Norris Co. v. Simpson Bros. Co., 202 Fed. 747, 121 C. C. A. 113; Delaski & Thropp Co. v. Fisk Rubber Co., 203 Fed. 986, 122 C. C. A. 286. This the plaintiff fails to do. We have practically nothing before June 28, 1907. Much of his testimony consists of impressions and guesses resulting from faulty or imperfect memory after the lapse of ten years. He has not borne the burden beyond a reasonable doubt.

The defendant says that the complainant ought not prevail in this suit because of laches—"most extraordinary and inexcusable delay on the part of Yates and his predecessors in interest." The validity of the defense of laches depends primarily upon the particular facts of the case in question. There are few general rules applicable to all cases. As Judge Sanborn, in the case of Ide v. Trorlicht, etc., Co., 115 Fed. 137, 148, 53 C. C. A. 341, 352, said:

"The doctrine of laches is an equitable principle, which is applied to promote, but never to defeat, justice. Under ordinary circumstances a suit in equity will not be stayed before, and will be stayed after, the time fixed by the analogous statute of limitations at law. But if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it."

[3] Almost innumerable conditions would determine this question, and only under very special circumstances should the court hold one guilty of laches whose litigation was instituted within the statutory limitation, which in patent cases is six years. Benthall Mach. Co. v. National Mach. Corp. (D. C.) 222 Fed. 918, 922. Whenever rights of third parties or the public intervene, or a defendant is allowed to put himself into a position from which he cannot extricate himself without great loss because of the silence and inactivity of the patentee with knowledge, he may not then assert his rights to their detriment.

[4] The parties in this suit were formerly associated in business. Smith employed Yates. In 1907 "they quarreled and severed their business relations." Whether or not they were unfriendly when they severed their relations or became so later, it is a fact that there seems

to have arisen a serious contention between them shortly after the separation. On January 28, 1909, Smith filed application for patent. On March 23, 1909, Yates filed application for patent and the Patent Office declared an interference between them. The patent No. 970,656 was finally issued to Smith as the inventor. on September 20, 1910. "Yates then obtained a patent on a modified structure * * * and commenced to manufacture and sell the same." Judge Learned Hand held that the Yates devices infringed the Smith patent. (D. C.) 216 Fed. 361. Yates continued to infringe said patent and was adjudged in contempt of court for the violation of the injunction of the court and upon appeal of these proceedings, the Circuit Court of Appeals said:

"The record shows a persistent and disingenuous purpose on the part of the defendant to appropriate the invention of the complainant. It also shows an emphatic recognition of the value of the invention by the courts of this circuit." 244 Fed. 793, 795, 157 C. C. A. 241, 243.

The proofs establish that the Bogenbergers had knowledge of Smith's automatic gravity stop in 1907, probably as early as March of that year, and thereafter it was brought to their attention by catalogues, letters, blueprints, sample, personal call, and advertisement in which Smith's device was fully described. They admit knowledge in 1908. In 1913, Smith, through his attorney, notified the Bogenbergers that they were infringing his patent. They replied May 29, 1913, saying, inter alia:

. "We are not infringing but believe that your client is guilty of the offense, which you are charging us with. However, we will submit this whole proposition to our attorney * * * and then you will hear from us immediately."

Smith's attorney replied, among other things, saying:

"Furthermore, Mr. Smith, informs us that, before you even made a stop of this character, you obtained samples of those made by him."

No reply to this letter was ever received, nor were the conclusions of the attorney ever conveyed to Smith in accordance with the statement contained in the letter of May 29, 1913. Smith continued to manufacture and sell his devices under his patent without interference, and with the apparent acquiescence of the Bogenbergers, until this suit was started in March, 1917, during which time Smith built up quite a large business all over the country. Between 1907 and 1917, the Bogenbergers were on friendly relations with Smith and purchased goods from him.

The complainant knew about the Bogenberger patent in 1913, if not before, for he was assisted by the Bogenbergers in certain phases of his litigation above referred to in that year. Yates, who later acquired the Bogenberger patent, though Bogenberger retains an interest therein, in that litigation set up that he was a licensee under the Bogenberger patent, and was operating thereunder, and was therefore not violating the injunction of the court and was not guilty of contempt.

These facts being established, are the complainant and his assignor guilty of such laches as to defeat the relief sought? No one case, be-

cause of the differences of fact, is an exact precedent for another. Yet a uniform principle pervades them all. The length of time during which a person neglects to assert his rights before they will be defeated on the ground of laches varies with the particular circumstances of each case, and is not, like the statute of limitations, subject to arbitrary rules. In order for duration of time to constitute laches, there must generally be: (1) Knowledge of the rights by the complainant or his assignors; (2) an opportunity to establish them in the proper forum; (3) by reason of the delay, the adverse party has good reason to believe that the alleged rights are worthless or have been abandoned; and (4) the relation of the defendant to those rights must have so changed that it would be inequitable to permit the complainant to assert them now. Galliher v. Cadwell, 145 U. S. 372, 12 Sup. Ct. 873, 36 L. Ed. 738. If the delay is harmless to the defendant, his relation to them remaining practically the same, he may not complain or take advantage of the delay. Delay may be excused, if due to the fact that the complainant did not know of the violation of his rights until long after it began, or that he was litigating a test case under his patent against another infringer during the time of the delay, or while litigation was in preparation. Walker on Patents (4th Ed.) § 596.

In the present case, the patentee and complainant knew of the Smith patent, and his contention that the Bogenberger patent was invalid, and that Smith was building up a large business based upon his device. The complainant cannot maintain that neither he nor the patentee had knowledge of their rights under the Bogenberger patent, nor that they did not have an opportunity to establish them in the proper forum, nor that they did not know that Smith claimed that the Bogenberger patent infringed his and that Smith was rapidly extending his business and putting himself in such position that it would be inequitable to permit the complainant to assert his rights now, whatever they may be. The complainant and the patentee, who has an interest in this litigation, are guilty of laches, and have thereby lost any right they might have had against the defendant. This point alone is dispositive of the case and justifies denial of the relief sought.

The bill will therefore be dismissed.