

Modified.

---

## In re COLE et al.
### No. 2556.

Court of Customs and Patent Appeals.
Jan. 21, 1931.

Frank B. Fox and Fraley & Paul, all of Philadelphia, Pa. (Sturtevant & Mason, of Washington, D. C., of counsel), for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Three of the four claims here involved (Nos. 21, 22, and 24), are method claims relating to "Improvements in tire molds and their manufacture." The fourth, No. 26, is for the article.

All were disallowed by the examiner, whose decision was affirmed by the Board of Appeals. Appeal was then taken to this court.

Claims 21, 22, and 24 read as follows:

"21. The method of forming a tire mold side piece of laterally hollowed annular mold contour by hot die-pressing in the axial direction a metal blank of substantially less radial dimension of metal than the piece to be formed, and not substantially of less height, so as to bring the metal to the desired shape by squeezing down and radial displacement.

"22. The method as set forth in claim 21 further characterized in that the blank is externally of smaller diameter than the highest portion of the piece, so that the metal of the blank is displaced radially to form the highest portion of the piece."

"24. The method of forming a tire mold side piece of laterally hollowed annular mold contour which comprises hot die-pressing in the axial direction a ring of much less radial width than the piece to be produced, and of

greater height, between die faces of shapes appropriate for the sides of the piece, and thus bringing the ring to the desired mold shape at substantially a single operation."

These claims were rejected by the tribunals of the Patent Office as defining nothing patentable over a patent to J. Clark for a process of making clamping-rings for pipe-couplings, being No. 1,060,320, issued April 29, 1913. Certain features of the claims seem also to have been regarded simply as not being inventive, with no particular regard to the reference.

The examiner, in addition to citing Clark, also rejected the claims on the subject-matter of an interference in which the appellants were at one time involved with a party, Witter, but the board disagreed with the examiner upon the applicability of the Witter reference, and same is not presented before us as a reference.

A portion of the brief for appellants in the appeal is devoted to alleged "inconsistent and prejudicial action" in the Patent Office relating to the granting of the Clark patent and the allowances to Witter following the disposition of the interference issue.

These contentions do not seem of consequence to the court in so far as determining the question of the patentability of appellants' claims—the only issue before us—is concerned, and it is not deemed necessary to discuss them.

It is the contention of appellants that Clark does not disclose (a) "the 'forming a tire mold side piece' "; (b) "the forging of a side piece 'of laterally hollowed annular mold contour' "; (c) "the forging in the axial direction of a blank which is 'not substantially of less height' than the piece to be formed"; (d) "a forging which brings the metal 'to the desired shape by squeezing down and radial displacement' "; (e) "a 'blank' that is 'externally of smaller diameter than the highest portion of the piece' "; (f) that element in claim 22 comprised in the clause "so that the metal of the blank is displaced laterally to form the highest portion of the piece."

All the foregoing features alleged to be lacking in Clark appear (a, b, c, and d) in claim 21 and (e and f) in claim 22 of appellants. Claim 24 seems to include (a), (b), (c), and (d), somewhat altered in phraseology, with the addition to (d) of the phrase "at substantially a single operation."

Features (a) and (b) above quoted, apparently, relate solely to the shape of the article produced and, in themselves, or by themselves, are not regarded as constituting invention, but the other features do disclose a novelty which, unless anticipated by prior art, we regard as patentable.

The Clark patent is related to an art which is not analogous to the art of the application, except as both may perhaps be processes of forging. The patent is for a process of making metal rings which are used to clamp the couplings of metal pipes; the application covers a process for making molds in which rubber automobile tires are vulcanized.

Feature (c), as above quoted, requires that applicants' metal blank shall be "not substantially of less height" than the piece which it is desired to form.

In the brief it is urged that this blank, before the forging, is of much greater height than the squeezed down mold piece produced after the forging, and the drawings are cited in verification.

The Clark specification states that in the process of making his rings he takes a bar of steel or wrought iron, preferably rectangular in cross section and of "less dimension in both directions" than the finished ring will be.

It is therefore insisted that applicants' blank, "not substantially of less height than, * * *" is anticipated by Clark's bar of "less dimension in both directions than. * * *"

It seems to us that applicants might have chosen a more apt expression than "not substantially of less height," in describing their blank, if, in fact, it is, as the brief argues, "of much greater height."

Notwithstanding this, however, the specification after setting forth criteria for dies and blank, does recite:

"With dies and a blank corresponding to these criteria, the die-pressing operation will cause displacement of the metal of the blank *downward* toward the base of the flange portion of the piece and radially inward and outward to form the inner and outer portions, * * * and radially, especially, to form the deep flange portion or portions. It is to such formation of the deep flange portions principally by direct radial displacement (rather than by attempting to force the metal to a great height by mere pressure) that the peculiar advantages of our method are largely due. * * *" (Italics ours.)

The drawings of the Clark patent, when carefully studied, seem to justify the conclusion that during the forging the metal is pushed up to a greater height than the orig-

inal height of the ring before forging. The description of operation in the specification does not specifically state as to this, but refers to the drawings and figures, from which it seems the deduction of pushing the metal upward is correct.

As for the first portion of feature (d) (bringing the metal "to the desired shape by squeezing down and radial displacement"), while the Clark specification may be construed to disclose this, in part, it remains true, we think, that his squeezing operation, in fact, differs from that of the application, at least to the extent that Clark "squeezes down" only around the edges of his blank while appellants' "squeezing" process operates upon "every bit of metal" in their blank.

The second part of feature (d), as enlarged by claim 24, is that of bringing "the ring to the desired mold shape at substantially a single operation."

The Clark specification says:

"The compression of the ring blank is conveniently effected by acting upon the blank with die rollers having the required configuration, or I may place the heated ring blank between dies which will operate upon the whole of the blank at once and by compression, as by means of a hydraulic press, or by drop forging, forge it into the desired form."

The patent thus sets forth that the forging may be by any one of three methods, rollers, press, or hammer. Appellants' application is limited to die-pressing. We think it proper to consider this particular feature in connection with all the other features of the claims, as hereinafter set forth.

As for the features comprised in (e) and (f) and partly in (d), the board said:

"In Clark the opening is of less diameter in the blank than in the finished article. Whether there is a radial displacement of the metal of the blank to form the highest portion of the ring is not clear but is believed immaterial."

It seems to us that when the particular character of the article which applicants propose to make is fully considered, the matter of radial displacement, as proposed by applicants, is probably of more importance than the board seems to attribute to it. The specification of applicants says:

"The forming of the tire-mold piece by hot die-pressing has certain special advantages over other methods of producing articles in forged steel. The mechanical work being done on the metal 'en masse,' so to speak, rather than in detail, there is less likelihood of local overheating, or of injury by working too cold, or of local overworking. On the other hand, the metal is subjected to a uniformity of pressure and working in the dies that tend to improve its grain and toughness, to compact it, and to correct any lack of homogeneity due to previous treatment that it may have undergone. The thorough and uniform effect of the die-pressing is enhanced, moreover, by the proportions of the annular blank discussed above, since they insure a very general moving about and deformation of nearly every portion of the blank during the pressing operation. The freedom of the hot die-pressed mold piece from internal stresses or strains is all the more important because of the oft-repeated quenchings at vulcanizing temperatures to which it is subjected in subsequent use."

While this may be somewhat argumentative for a specification, it is within a legitimate range, and we known of no reason why these considerations are not entitled to some weight, if correct, as reason indicates them to be.

After careful consideration of the claims, drawings, and specifications of the application and of the patent to Clark, we feel that the tribunals of the Patent Office fell into error in disallowing claims 21, 22, and 24. While, when dissected, features are found concerning the patentability of which doubt exists in our minds, we are convinced that in certain essentials there is invention not shown to be anticipated by anything presented before us.

Applicants have apparently made a valuable contribution to the art of tire production, and we feel that they are entitled to have any doubts resolved in their favor. Application of McClaire, 57 App. D. C. 11, 16 F. (2d) 351; Irwin v. Hasselman (C. C. A.) 97 F. 964; Ex parte Harbeck, 191 O. G. 586.

In so far as this court can determine from the record before us, appellants succeeded in solving an important problem in the field of automobile and truck tire making. Some of the steps of their process may be related to some of the steps of the Clark process, but the doctrine as expressed in the syllabus of Truax v. Childs Co. (C. C.) 162 F. 907, seems apropos:

"Devices and publications leading up to, but not fully accomplishing, a desired end, do not anticipate an invention which for the first time effectively meets all requirements and successfully accomplishes such end."

578

In Beckwith v. Malleable Iron Range Co., 174 F. 1001, 1009, 1010, the United States Circuit Court, E. D. of Wisconsin, said:

"It is elementary that, when it is sought to ascertain the state of the art by means of prior patents, nothing can be used except what is disclosed on the face of those patents. Such patents cannot be reconstructed in the light of the invention in suit and then used as a part of the prior art. Naylor v. Alsop Process Co., 168 F. 911, 920, 94 C. C. A. 315."

A syllabus of Topliff v. Topliff et al., 145 U. S. 156, 12 S. Ct. 825, 36 L. Ed. 658, reads:

"It is not sufficient, in order to constitute an anticipation of a patented invention, that the device relied upon might, by modification, be made to accomplish the function performed by that invention, if it were not designed by its maker, nor adapted, nor actually used for the performance of such function."

In General Electric Co. v. De Forest Radio Co. (D. C.) 17 F.(2d) 90, 91, the doctrine was stated that:

"Prior patent, to constitute 'anticipation,' must be sufficiently full, clear, and exact to enable persons skilled in art to construct or practice the invention without exercise of further inventive skill or experiment, and description must be sufficient to constitute a specification."

The disclosures of the Clark patent do not seem to us to teach a method of making the tire mold of the application. They do not suggest any such product. No such product could be made by the Clark process, even by persons skilled in this art, except by modifications so extensive as practically to change the entire character of the operation. Attention has been already directed to the fact that, upon what applicants designate as a most important element of their claimed invention, there is, apparently, a direct reversal of operation, in that in the patent the metal is pressed upward while in the application it is pressed downward. The results thus obtained are different and intended to be different.

Claim No. 26 reads as follows:

"26. A tire mold side piece of laterally hollowed annular mold contour axially hot die-pressed to shape, at substantially a single operation, out of a forged steel blank of substantially less radial dimension of metal than said piece and not substantially of less height, and characterized by corresponding homogeneity and toughness due to the flow of the metal from the aforesaid blank form to mold form in the dies."

This claim for the article was rejected on the Clark reference and also "because limited by the method of making it." We think the rejection on the latter ground was proper.

In an opinion by Judge Bland, this court, in Re Butler, 37 F.(2d) 623, 17 C. C. P. A. 810, reviewed a number of decisions of other courts bearing upon the question of granting patent for an article when defined solely by the process of its making. In that case, however, invention was not found to exist, but the law, as this court understands it, was there stated.

In the case of In re Brown, 58 App. D. C. 285, 29 F.(2d) 873, 874, the Court of Appeals of the District of Columbia said:

"It is a well-settled rule of patent law that claims for a product which is defined by the process of producing it will not be allowed; and the only exception to this rule seems to be in cases where the product involves invention and cannot be defined except by the process used in its creation."

We do not feel that applicants are within the exception. Furthermore, as pointed out by the examiner in his supplementary statement of November 7, 1928:

" * * * The structure of applicant's finished article shown in Fig. 6 does not reveal whether or not the article was die-pressed at substantially a single operation or a plurality of operations. Neither does it reveal whether or not the forged steel blank out of which it was made was 'of substantially less radial dimension of metal than said piece and not substantially of less height.' It is not seen how it can be successfully contended that these two features of applicant's process appear in the finished product."

The fact that Clark was granted a patent on his article, described only by the method of producing it, does not convince us that applicants should be granted a similar one on theirs.

The decision of the Board of Appeals of the Patent Office is affirmed as to claim 26. As to claims 21, 22, and 24 it is reversed, and patent will issue accordingly.