### MURPHY WALL BED CO. et al. v. RIP VAN WINKLE WALL BED CO.

(District Court, N. D. California, Third Division. December 28, 1923.)

#### No. 1079.

1. **Patents ⊕165—Limitations in narrow claims not imported into broad claim.**

   Infringement cannot be avoided by reading into a broad claim specific devices claimed in narrower claims.

2. **Patents ⊕178—Entitled to equivalents commensurate with importance of invention.**

   That a patent, as required by Rev. St. § 4888 (Comp. St. § 9432), describes a machine or device as the inventor's preferred form, does not limit it to that form, but it is entitled to a range of equivalents commensurate with its standing and importance in the art.

3. **Patents ⊕328—Murphy reissue, No. 13,428, for wall bed, held infringed.**

   The Murphy reissue patent, No. 13,428, for a wall bed, is entitled to a broad construction as embodying the first successful solution of an old problem; also *held* infringed by a structure which operated in accordance with the fundamental idea of the patent by revolving around a vertical axis to shift it through a wall opening.

4. **Patents ⊕36—General adoption and imitation persuasive evidence of value and scope of invention.**

   The fact that a patented article has come into general use and has been persistently imitated and appropriated by others is evidence of the scope and value of the invention.

In Equity. Suit by the Murphy Wall Bed Company and Marshall & Stearns Company against the Rip Van Winkle Wall Bed Company. On motion for preliminary injunction. Granted.

William K. White, of San Francisco, Cal., for plaintiffs.
Creed, Jones & Dall, of San Francisco, Cal., for defendant.

PARTRIDGE, District Judge. This is a motion for injunction pendente lite, based upon alleged infringement of plaintiffs' patent. Inasmuch as the issuance of an injunction means the halting of defendant's business, I have given the matter the most minute examination, .

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and the most careful analysis of which I am capable. In this examination, I have kept in mind three fundamental considerations:

(1) The plaintiffs' patent has been in almost constant litigation since its reissue, and has been adjudged valid "as a pioneer in scope," and "has revolutionized the art," and "has been followed by such a universal adoption of the conception in its essential features as to justly be regarded as possessing the elements of an original conception." Opinion of Judge Van Fleet in Murphy Wall Bed Co. v. Pacific Spring Bed Co. (No. 15,589) 295 Fed. 745.

(2) The plaintiffs' patent has only about 5 years to run, so that it would seriously impair the value of its monopoly to delay until final hearing.

(3) The matter has been as fully presented (with full sets of models) upon this motion as it could be upon final hearing. The affidavits, briefs, and oral arguments, have, indeed, been models of ability and exhaustive in scope.

At the outset, I cannot avoid the conclusion that defendant's structure is but one of a series of attempts by various persons to appropriate a portion of Murphy's success by mere changes in form. It seems that the art of manufacturing wall beds is some 70 years old, covered by several hundred patents. The ideal sought was always a bed which should be, not only out of sight, but out of mind—that is, a bed which could be caused to disappear so effectually that there should be no suggestion of its presence in the room. Before the Murphy patent, this had not been accomplished. Murphy solved the problem. He perfected a device (reissue patent, No. 13,428) for a "bed adapted to be moved about a vertical axis through an opening and shifted laterally in respect to such opening when at the rear thereof and when in the front thereof." It is not too much to say that this invention completely solved the problem and revolutionized the art. It permitted (as shown by the models) a bed of full size to be moved through an opening the size of an ordinary closet door, and its consequent disappearance from view.

With the concentration of ever-increasing numbers of our people in cities, and the consequent growth of the apartment house idea, this conception of Murphy became of great value. By its means, a small room with a small closet became a bedchamber at night, and by a simple movement was transformed into a living room—with no sign or suspicion of a bed—on the morrow. This is the thing he accomplished; now, what were his claims?

Claim 13:

"In combination with a wall having an opening, a bed pivoted on a vertical axis adjacent to one side of said opening and intermediate between the sides of the bed."

Claim 14:

"In combination with a wall having an opening, a bed comprising a part pivoted on a vertical axis adjacent to one side of said opening and intermediate between the sides of the bed, and a folding bed frame adapted to swing upward upon a horizontal axis."

These claims are broad enough, and include the real improvement by which the results mentioned above have been accomplished. However, the Murphy reissue also contains these claims:

"9. In combination with a wall having an opening, a bed of greater width than said opening, and pivotal means for connecting the wall, at one vertical side of said opening, and the bed, whereby in the horizontal movement of the bed through said opening on said pivotal connections different portions of the bed swing therethrough at different times.

"10. In combination with a wall having an opening, a bed of greater width than said opening, and pivotal means for connecting the wall at one vertical side of said opening, and the bed intermediate of the sides thereof."

[1] Upon the basis of these last two claims (9 and 10), defendant urges that its bed does not infringe, because: (1) The opening is wider, not narrower, than the bed. (2) The vertical axis is not *adjacent*, in that it is nearer the center than the side.

It is entirely apparent, in the first place, that claims 9 and 10 are in the truest sense his preferred form of embodiment of his broad idea of means. This is apparent, first, by the state of the art, and the result, largely, which was sought; and, secondly, the fact that claims 13 and 14 are so much broader than claims 9 and 10. As was said by the Circuit Court of Appeals of this circuit in Los Angeles Art Organ Co. v. Æolian Co., 143 Fed. 885, 75 C. C. A. 93:

"The claims of a patent should be construed, where they reasonably may be, to cover the entire invention of the patentee; and where a patent contains several claims, some of which are limited to details, the others are prima facie not to be restricted by insisting that they contain, as necessary elements, the particulars which are specifically covered elsewhere. The general rule is, as stated by the court in Risdon I. & L. Works v. Trent (C. C.) 92 Fed. 375, 388, that 'infringement cannot be avoided by reading into a broad claim of a patent specific devices claimed in narrower claims of the patent.'"

Now, just how broad is Murphy's improvement? In Murphy Wall Bed Co. v. Pacific Spring Bed Co. (No. 15,589) 295 Fed. 745, in this district, Judge Van Fleet gave the matter a most exhaustive examination, althought the validity of the patent had previously been established in the Southern district of this state by decree of Judge Wellborn. Judge Van Fleet said:

"I am quite unable to agree with the view, so urgently put forward by the defendant, that this conception was in any material respect anticipated by any one of the several patents relied on for the purpose. In view of its simplicity, now that the idea is disclosed, it may easily be said that in the light of the prior art it would have been obvious; but the history of the art shows very clearly that it was not so. There had been issued something like 800 prior patents in the art, all looking to the idea of attaining the same end; that is, of securing some means of concealing in an ordinary room used for general household purposes a standard double width bed in such manner that its presence would not be obvious to the ordinary observer, but without previous success, and that being so, and the art showing no prior evidence of the advance here made, or any real development of the essential idea embraced in this patent, I think that it must be given the benefit of a broad conception. The principle upon which the device works is that of providing means whereby a bed of the character mentioned may be turned upon a vertical axis adjacent to one side of the opening entirely through a closet door of ordinary width, and concealed in a closet of ordinary standard dimensions. If I am right as to the scope of the conception, the invention, upon

well-established principles, covers any means by which the same thing may be accomplished in an equivalent way, because, being of a broad character, it is entitled to the full benefit of the doctrine of equivalents; and I am quite satisfied that the alleged offending device of the defendant while mechanically different in some respects, nevertheless involves substantially the same principle as that upon which plaintiff's conception is based. It is true that the defendant's device involves some additional movements, and it may be that it is an improvement in some respects over the plaintiff's device; but this does not avoid infringement of the fundamental conception of the plaintiff."

Judge Van Fleet further points out that in Murphy's *original* patent only claims 9 and 10 appeared, while in the *reissue,* claims 13 and 14 were included, and (to again quote the language of Judge Van Fleet)—

"The propriety of a reissue grew out of the fact that Murphy determined that *the claims of his original patent were not commensurate with, nor broad enough to cover, his invention, and which I think is obviously correct.*" (Italics mine.)

In Perfection Disappearing Bed Co. v. Murphy Wall Bed Co. (C. C. A.) 266 Fed. 698, the validity of these additional claims in the reissue was sharply contested. The Circuit Court of Appeals of this Circuit, however, upheld them in the broadest possible way. Judge Gilbert says:

"The Murphy disappearing bed, as disclosed in the original patent, marked a distinct advance in the art. The invention relates to means for concealing a bed in such a way as to leave no suggestion of its use in the room in which it is to be used. Many previous devices for this purpose were in the field, when Murphy conceived the idea that a bed might be adapted to be moved about a vertical axis through an opening of less width than the bed, and shifted laterally with respect to such opening, and concealed in an ordinary closet, behind an ordinary closet door only three feet in width. In the original patent the claims covered two methods in which this might be accomplished. One was by attaching the bed to a door which opened outwardly from a small closet or an adjoining room. The other was by attaching a bed by pivotal means to the wall at one vertical side of the door opening. In claims 13 and 14 of the reissue patent a third method was added—that of pivoting the bed upon a vertical axis adjacent to one side of the opening. All of these methods were adapted to accomplish the same result, and to carry out the idea which was the gist of Murphy's invention. The leading case construing the statute here involved is Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658, where Mr. Justice Brown reviewed the decisions and said: 'From this summary of the authorities it may be regarded as the settled rule of this court that the power to reissue may be exercised, when the patent is inoperative by reason of the fact that the specification as originally drawn was defective or insufficient, or the claims were narrower than the actual invention of the patentee, provided the error has arisen from inadvertence or mistake, and the patentee is guilty of no fraud or deception.' "

Imagination and invention are frequently discussed by shallow writers on psychology as involving the same mental processes—as if dreams and reality were the same thing. No doubt many chemists and manufacturers dreamed of synthetic rubber; but it curiously became a fact through the experiments of widely separated persons in Germany and England. The next step is to make the substance practical; that is, to make it capable of serving human needs at an expenditure within the value of the thing produced. It is only when the thing has passed through these three stages that it becomes a useful invention. Inven-

tion, therefore, in the economic sense, is clearly a product of imagination, which will pass the social test of use within the bounds of expense of production, limited by the value of that use.

[2] Now Herbert Spencer, in his celebrated chapter on the Kantian idea of space (2 Principles of Psychology, p 352), points out the perfectly evident proposition that "whatever is separable into parts contains that which is contained in the parts." Identically the same proposition is established in the law of patents: "The range of equivalents varies with the scope of the invention." Section 4888 of the Revised Statutes (Comp. St. § 9432), in prescribing what an inventor must embody in his application for a patent, says:

"* * * In case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle."

But, clearly, where he has crystallized the imagination of himself—and others—into the reality of a product useful to mankind, he should not be restricted to this "best mode." His "best mode," or preferred form of embodiment of his generic idea, which has constituted his valuable contribution to the welfare of his fellows, is necessary, for the very reason that patents are practical, concrete—a form of giving a monopoly to facts and not to dreams. But it by no means follows that the inventor is to be confined to that best mode. As the Supreme Court pointed out, in Diamond Rubber Co. v. Consolidated Rubber Co., 220 U. S. 435, 31 Sup. Ct. 447 (55 L. Ed. 527):

"Knowledge after the event is always easy, and problems once solved present no difficulties, indeed, may be represented as never having had any. * * * But the law has other tests of the invention than subtle conjectures of what might have been seen and yet was not. It regards a change as evidence of novelty, the acceptance and utility of change as a further evidence, even as demonstration."

A long time before, the Supreme Court, in Winans v. Denmead, 56 U. S. (15 How.) 340, 14 L. Ed. 717, had said:

"It is generally true, when a patentee describes a machine, and then claims it as described, that he is understood to intend to claim, and does by law actually cover, not only the precise forms he had described, but all other forms which embody his invention; it being a familiar rule that, to copy the principle or mode of operation described, is an infringement, although such copy should be totally unlike the original in form or proportions. * * * Patentees sometimes add to their claims an express declaration, to the effect that the claim extends to the thing patented, however its form or proportions may be varied. But this is unnecessary. The law so interprets the claim without the addition of these words. * * * And therefore the patentee, having described his invention, and shown its principles, and claimed it in that form which most perfectly embodies it, is, in contemplation of law, deemed to claim every form in which his invention may be copied. * * * "

[3] Now, as this court has several times decided, Murphy did succeed where others failed. There were in existence at the time of his invention some 800 patents in the wall bed art. All were unsuccessful, in that all failed to accomplish the real result, a bed which should not only be concealed, but should give no hint of its presence, in an

ordinary room, with the ordinary domestic paraphernalia. Beds, which in the daytime became bookcases, beds of the "barn door" type, were common enough. But Murphy solved the problem by an arrangement by which (as claimed by him in Murphy Wall Bed Co. v. Pacific Spring Bed Co., supra) he embodied those features which solved the problem for all time, to wit:

(1) A bed adapted to be moved about a vertical axis entirely through an opening.

(2) A bed adapted to be moved about a vertical axis entirely through an opening, and shifted laterally in respect to such opening when at the rear thereof and when at the front thereof.

(3) A bed adapted to be moved about a vertical axis entirely through an opening of less width than the bed and shifted laterally in respect to such opening when at the rear thereof and when at the front thereof.

It is, of course, quite true that Murphy's preferred form was the third—that is, by his device the bed could be passed easily and rapidly through an ordinary door and completely hidden in an ordinary closet. It is equally true that to accomplish this the vertical axis was placed nearer to one side of the door. But that was not the essential. The real invention was the shifting of the bed entirely through an opening by means of an axis, and then shifted laterally whether within the recess back of the opening or out in the room. In my opinion, therefore, any bed which performs this revolution on an axis, with the lateral shift after each movement, takes advantage of Murphy's "broad idea," and thus constitutes an infringement.

Now, defendant's bed does not move through an opening smaller than the bed, nor is the vertical axis so near the side as in the case of Murphy's bed. But it is moved about the vertical axis through an opening in the wall, and is shifted laterally with respect to this opening, so that when it is in the closet space, a portion of it extends behind the wall at one side of the opening, and when the bed is out in the room, a portion of it extends in front of the wall at one side of the opening. The only differences are that the opening is larger, the vertical axis nearer the center of the bed frame, and consequently a smaller portion of the bed is behind the wall after the lateral shift. The result attained is thus identically the same, and the means adopted are essentially the same; the variation being only in the distances and dimensions.

It is claimed, however, that the defendant's bed is built in accordance with things known in the prior art, reference being had particularly to the "barn door" type of bed. It is clear, however, in the first place, that there was nothing *successful* in the whole 800 inventions before Murphy. His lateral shift was the simple improvement which revolutionized the art. As Judge Gilbert, speaking for the Circuit Court of Appeals in this circuit, said in Kitchen v. Levison, 188 Fed. 659, 110 C. C. A. 425:

"It is urged that the improvement which the appellee made on the prior art was simple and obvious. It may be conceded that it was simple, but that fact alone does not deprive the invention of patentability. There may be the highest form of invention in some of the simplest improvements on the prior art."

295 F.—48

Said the Circuit Court of Appeals for the First Circuit in Dececo Co. v. Gilchrist Co., 125 Fed. 293, 60 C. C. A. 207:

"To obtain absolute simplicity is the highest trait of genius."

The Supreme Court, in Expanded Metal Co. v. Bradford, 214 U. S. 381, 29 Sup. Ct. 656 (53 L. Ed. 1034), says:

"The fact that the invention seems simple after it is made does not determine the question; if this were the rule, many of the most beneficial patents would be stricken down."

Now, every bed, and every device for concealing a bed, in the whole range of 70 years and 800 patents, fell short of success. Murphy for the first time reached the goal—turned comparative failure into complete success. The best evidence, therefore, of defendant's infringement, is the fact that its bed, being on a vertical axis, and shifted laterally front and back, is a success, which it never could be, were it not for Murphy's broad idea. As Judge Ross, speaking for the Circuit Court of Appeals for the Ninth Circuit, said in Morton v. Llewellyn, 164 Fed. 693, 90 C. C. A. 514:

"Apart from the presumption of novelty that always attends the grant of a patent, the law is that, where it is shown that a patented device has gone into general use, and has superseded prior devices having the same purpose, it is sufficient evidence of invention in a doubtful case."

[4] Moreover, the fact that the Murphy bed has come into such general use, and has been so constantly imitated and appropriated, strongly favors the conclusion as to its scope and value. As was said in Wilkins Shoe-Button Fastener Co. v. Webb (C. C.) 89 Fed. 997:

"In determining this question the fact that the article produced supersedes all other appliances, or that a useful and commercially successful result has been attained, or that the value of the thing patented has been recognized by the public in extensive use, has a controlling, if not a conclusive effect; and it should have, upon obvious principles of justice to one who sees that which he suggests constantly appropriated and used by others."

And the same principle is applied by the Supreme Court. In Diamon Rubber Co. v. Consolidated Rubber Co., 220 U. S. 441, 31 Sup. Ct. 450 (55 L. Ed. 527) that court quotes:

"And we have said that the utility of a device may be attested by the litigation over it as litigation 'shows and measures the existence of the public demand for its use.' Eames v. Andrews, 122 U. S. 40."

So the real test of infringement is laid down in this circuit in Los Angeles Art Organ Co. v. Æolian Co., supra:

"In passing upon the issue of infringement, the question to be determined is whether, under a variation of form or by the use of a thing which bears a different name, the defendant accomplished by" the use of "his machine the same purpose or effect as that accomplished by the patentee or whether there is a real change of structure or purpose."

And in the same case the court quotes this language from Blandy v. Griffith, Fed. Cas. No. 1,529:

"As long as the root of the original conception remains in its completeness, the outgrowth—whatever shape it may take—belongs to him with whom the conception originated."

Finally, the Circuit Court of Appeals for this circuit has pointed out clearly the distinction between a broad and a narrow claim, in Kings County Raisin & Fruit Co. v. U. S. Consolidated Seeded Raisin Co., 182 Fed. 59, 104 C. C. A. 499, winding up with the citation of a number of cases to support the following language:

"But if his is a pioneer invention, or one of such merit as to be entitled to a liberal construction, the claim will not be thus limited, even if couched in specific language unless the inventor has also shown his positive intention to relinquish to the public all other forms in which his invention might be embodied."

In this case, the Murphy invention, having achieved success for the first time in the art, has led to wide adoption, and brought about an extensive and profitable use. Many have sought to appropriate it, as shown by the extensive litigation which has followed it. Murphy, so far from relinquishing to the public other forms beside the one mentioned in claims 9 and 10, specifically reserved to himself all other forms by claims 13 and 14 of the reissue. I am satisfied, therefore, in accordance with the authorities cited, that the defendant must be held to be an infringer.

The injunction pendente lite will therefore issue as prayed. The parties will perhaps agree upon the bond; if not, the matter may be set down for hearing as to the amount.