## BANKERS' UTILITIES CO., Inc., et al. v. PACIFIC NAT. BANK et al.

(Circuit Court of Appeals, Ninth Circuit. March 28, 1927.)

No. 4981.

1. Patents ⊙25—Aggregation of old elements may constitute invention, if it arises above mere mechanical skill.

Though the mere assembling of old elements does not constitute invention, an aggregation and association of old elements may constitute invention, if it arises above mere mechanical skill and produces utility of a superior virtue to that previously obtained.

2. Patents ⊙72(1)—That prior patented device may be easily changed to produce same result as subsequently patented device does not show anticipation.

Anticipation is not made out by the fact that a prior existing device shown in a prior patent may be easily changed to produce the same result as that of the device of the patent in suit, where the prior device was in common use, without it occurring to any one to adopt the change suggested by the patent in suit.

3. Patents ⊙312(1⅛)—Plaintiffs, suing for infringement of patent, are aided by presumptions attending patent and by its commercial success.

Plaintiffs, suing for infringement of patent, are fortified by presumptions arising from issuance of their patent and by fact that their device is a commercial success and has brought an imitation.

**4. Patents ⊕═►328—1,460,716, for metal book-form savings bank with detachable covering, held valid as to claim 6 and void as to others.**

Greer patent, No. 1,460,716, for a metal book-form savings bank with a detachable covering simulating the binding of a book, *held* valid as to claim 6, and void as to other claims, in so far as they may be construed to be of broader scope than claim 6.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Patent infringement suit by the Bankers' Utilities Company, Inc., and another, against the Pacific National Bank and another. Decree for defendants, and plaintiffs appeal. Reversed, with directions.

Roy L. Daily, of San Francisco, Cal., for appellants.

Charles E. Townsend and William A. Loftus, both of San Francisco, Cal., and C. P. Goepel, of New York City, for appellees.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. The suit involves the validity of patent No. 1,460,716, issued to the plaintiff, Butler F. Greer, for a coin receptacle or savings bank. By the lower court it was held void for anticipation and lack of invention, and from a decree dismissing the bill, which charges infringement, plaintiffs appeal.

As described in the claims and exemplified in the device they have manufactured and extensively sold on the market, plaintiffs' bank is in the similitude of a small book, consisting of two distinct units detachably assembled. There is first a complete metal case, having a suitable slot for the insertion of coins, and a hinged cover, fitted with lock and key. The other member is an attachable envelope cover for the case, made of leather or other suitable material, so fabricated, with flexible back and stiffened sides, that it closely resembles the binding of a book, and when applied to the case in the manner described has the appearance of being an integral part thereof. The stiffening of the sides is accomplished by two metallic plates, permanently built into the covering material; and from these are stamped tongues, which, upon being inserted through slots in the sides of the case and bent over, rigidly, yet detachably, unite the two members.

Claim 6, which, as will be seen, we regard as of controlling importance, is as follows:

"A book form savings bank comprising a case formed with slots in the sides thereof, a covering for said case simulating the binding of a book, stiffening boards for said cover, and tongues stamped from the body of each board and adapted to extend through said slots and be bent over on the inside of said case to detachably secure the covering thereto."

It is conceded that all the elements are old, and at the time the patent was applied for savings banks of similar appearance were well known in the art. The novelty contended for consists in so combining these elements that an envelope cover, simulating the binding of a book and complete in itself, may be readily applied to and without injury detached from a complete case. Its utility is thus explained:

For the most part such devices are sold to banks and other savings institutions, to be loaned or otherwise distributed, for use in the home, in the promotion of thrift. The case is practically indestructible and may be used indefinitely. The cover is less serviceable. It is generally made of imitation leather, with ornamental design and lettering to suit the taste of the purchaser. Worn and soiled from use, it ceases to be attractive; or because of a change in the name of the savings institution, or due to other local conditions, it may become desirable to have an entirely new design, including the lettering. In either case it would be necessary only to substitute a new cover. The substitution may, without difficulty, be made by the user, or, if preferred, at the factory, with no substantial charge for the service. It seems that the average cost to customers of plaintiffs' bank, in 1,000 lots, is $1.10, while the cost of the cover alone is from 16 to 22 cents. It will thus be seen that, should an institution desire a different design, or different lettering for devices it has on hand, or the exchange of a new bank for one that has become soiled or worn in the hands of a patron, the substitution can be accomplished at a comparatively small outlay.

Witnesses for the plaintiffs testified that in the five years it has been on the market they have sold approximately 1,000,000 banks of this type; that there is practically no demand for the old, nondetachable device, which formerly had a wide sale; and that in the last two years they have sold approximately 30,000 unattached covers. Defendants admit infringement; indeed, the bank they make and sell is so nearly identical with that of the plaintiffs that undoubtedly the latter was used as a model.

[1] The underlying principles of law are well understood. It is recognized that merely

18 F.(2d)—2

to assemble old elements does not constitute invention. But, upon the other hand, "an aggregation and association of old elements may constitute invention, if it rises above mere mechanical skill and produces utility of a superior virtue to that previously attained." Bliss v. Spangler, 217 F. (9th C. C. A.) 394; The Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 450, 36 L. Ed. 154. These requirements, we think, are met by the plaintiffs' device. The improvement wrought by the combination may be simple, but it is substantial and plainly useful. It is not found in the prior art, or covered by the claims in any of the references. While possibly it does not involve a high degree of inventive genius, it rises above mere mechanical skill, and exhibits a measure of patentable novelty.

We do not attempt to describe the numerous patents cited by defendants in support of their "anticipation" defense. Probably the nearest resemblance to the plaintiffs' structure is to be found in Fisher, No. 1,403,854. The combination there called for is of a bank in the proportions and form of a book, with an opening member swinging like the lid of a book. But the covering is an integral part of the case and essential to its existence. To remove it the whole device must be disassembled, and upon such removal the structure, which is ingeniously complex, falls into numerous parts. To reassemble and again cover them would apparently require a measure of technical skill quite unnecessary in attaching plaintiffs' cover to their case. In point of detachability, to compare such a device with that of plaintiffs, would be like comparing the cover of an ordinary book with the cover of a loose-leaf record.

[2] Defendants show that a Gillette razor case, upon which they read the claims of the Farrington patent, No. 1,217,291, can, by certain changes or additions, be made to exhibit the essential features of plaintiffs' cover; but Gillette cases were admittedly in common use, and it remained for counsel, under the exigencies of this litigation, and with plaintiffs' commercially successful device as a model, to suggest the additions. Anticipation is not made out "by the fact that a prior existing device, shown in a prior patent, may be easily changed so as to produce the same result as that of the device of the patent in suit where the prior device was in common use, without it occurring to any one to adopt the change suggested by the patent in the suit." Blake Automotive Equipment Co. v. Cross Mfg. Co. (C. C. A.) 13 F.(2d) 32.

[3] In their position plaintiffs are fortified by the presumptions attending a patent (Wilson & Willard Mfg. Co. v. Bole [C. C. A.] 227 F. 607; Heinz Co. v. Cohn [C. C. A.] 207 F. 547; San Francisco C. Co. v. Beyrle [C. C. A.] 195 F. 516), and by the fact that their device is a commercial success and has brought on imitation (Application of Mc-Claire [D. C.] 16 F.[2d] 351; Sandusky v. Brooklyn Box Toe Co. [D. C.] 13 F.[2d] 241; Carson v. Am. Smelting Co. [C. C. A.] 4 F. [2d] 463; Murphy Wall Bed Co. v. Rip Van Winkle Wall Bed Co. [D. C.] 295 F. 748; Globe Knitting Works v. Segal [C. C. A.] 248 F. 495; Morton v. Llewellyn [C. C. A.] 164 F. 697.

[4] While we find in plaintiffs' device patentable novelty, in view of the prior art, the invention is not thought to be basic. The limits of their rights are fairly defined in claim No. 6, the validity of which we sustain. In so far as the other claims may be construed to be of broader scope, they are held to be void.

The decree below will be reversed, with directions to take further proceedings not out of harmony herewith.