## BANKERS' UTILITIES CO., Inc., et al. v. PACIFIC NAT. BANK et al.*

Circuit Court of Appeals, Ninth Circuit. April 15, 1929.

No. 5651.

Roy L. Daily and Hugh K. McKevitt, both of San Francisco, Cal., for appellants.

Chas. E. Townsend and Wm. A. Loftus, both of San Francisco, Cal., and C. P. Goepel, of New York City, for appellees.

Before RUDKIN and DIETRICH, Circuit Judges, and BEAN, District Judge.

*Rehearing denied June 3, 1929.

DIETRICH, Circuit Judge. By our decision in Bankers' Utilities Co. and others v. Pacific National Bank and others (No. 4981) 18 F.(2d) 16, reversing the decree below, we sustained the validity of the Greer patent, No. 1,460,716, for a book form coin receptacle or savings bank with detachable cover. Petitions for a rehearing and certiorari having been denied, the mandate went down and was filed in the District Court on October 18, 1927, directing that the decree in that court be vacated and that further proceedings be taken not out of harmony with our opinion. Accordingly on October 26, 1927, the District Court entered an interlocutory decree adjudging the validity of the patent, enjoining the defendants from making, selling, or using any device embodying plaintiffs' invention, particularly as defined in claim 6 of the patent, and directing a judgment in plaintiffs' favor for such damages as they had sustained by reason of defendants' infringement, to ascertain which an accounting was ordered with reference for that purpose to a special master.

It seems that in the course of the accounting proceedings, which were commenced in December, 1927, it was shown that prior thereto the defendants had discontinued the manufacture and sale of the specific device we held to be an infringement, but they were making and selling four other book form receptacles. By defendants it is stated that, as to at least two of these, plaintiffs sought to extend the accounting, upon the theory that they were infringements; and upon a finding by the master that one of them, referred to as "Exhibit A," incorporated the invention, defendants discontinued putting it on the market. Respecting two other models, the so-called "Tiffany" and "Universal," the master had expressed no view when this appeal was taken, but he apparently was of the opinion that the fourth, called the "Ambassador," did not constitute an infringement. However that may be, while the accounting was still in progress and before the master made or filed his report, counsel entered into a stipulation, on January 11, 1928, by which it was agreed that the principal defendant, National Bank Supply Company, and its alter ego, David H. Zell, Inc., which concern consented to become a party to the suit, would pay and the plaintiffs would accept $20,500 in full settlement of the damages which were the subject of the accounting. The amount was to be paid in installments to be completed on or before December 15, 1928, and upon full payment the master should report accordingly. Pursuant to this agreement, the accounting proceedings were suspended and the master's report was deferred.

On July 18, 1928, six months after the whole matter of the accounting had thus been disposed of by the stipulation, excepting only the payment of the amount agreed upon, the defendant interveners, Bankers' Utilities Company and David H. Zell, Inc., filed what they designated as a "Motion for Order Defining Scope of Injunction." In the memorandum filed therewith their counsel stated that the purpose thereof was to "enjoin the plaintiffs from: (a) Misrepresenting the scope of the decree herein; and (b) harassing defendants' customers by vexatious litigation or threats of litigation in respect to devices which are clearly outside the scope of the decree or have already been accounted for by defendants."

In substance, the so-called motion or petition represented that the petitioners were marketing the several devices hereinbefore referred to as the "Tiffany," "Universal," and "Ambassador"; that by mail and through their agents the plaintiffs were making representations to their customers by which expressly or inferentially it was suggested that the devices were infringements of the patent and that in using them the customers would incur the peril of claims for damages; that three several suits had been brought by plaintiffs in which such claims were asserted against customers; and that other suits were threatened. Bearing upon some of the averments exhibits were attached to the motion. In response thereto plaintiffs filed a written "Opposition," in which were denials, admissions, and affirmative explanatory matter, and it, too, was in part supported by attached exhibits. Upon such a showing and apparently without evidence other than the exhibits, among which were an affidavit for defendants and one for plaintiffs, the District Court on August 1, 1928, entered a "Decree Supplemental to Decree filed October 25, 1927," adjudging that no one of defendants' devices, "Universal," "Ambassador," and "Tiffany," constitutes an infringement of plaintiffs' patent, perpetually enjoining plaintiffs and all persons representing them from asserting a claim to the contrary, by suit or otherwise, and restraining them from further prosecuting the pending suits in other districts and from threatening to bring additional

suits of like character. From such "Decree" the plaintiffs prosecute this appeal.

Inasmuch as plaintiffs did not below clearly object to the procedure and do not urge it here as erroneous, and it does not involve a question of jurisdiction, we have chosen to decide the matter upon the merits; but in so doing we are not to be understood as approving the procedure, for which we find no precedent. Assuming that the question whether the new devices were infringements was properly brought into the accounting record upon plaintiffs' initiative and with the acquiescence of defendants, it should have been therein tried out in regular course. It would there have been open to both parties to adduce their evidence, and upon exceptions to the rulings of the master and to his final report the aggrieved party could have taken the judgment of the District Court, and if dissatisfied therewith would have had a remedy by appeal. Instead of pursuing that course, the defendants closed the door upon it by a stipulation settling the accounting controversy and leaving for the master the function only of making a pro forma report and for the court the formal entry of a final decree closing the case. The result is that we have in the record the decree appealed from, final in form and effect, entered before the issues made by the original pleadings were finally disposed of, in a summary proceeding adjudicating issues not exhibited by the original pleadings. It is not thought that anything said in Bowers v. Pacific Coast Dredging Co. (C. C.) 99 F. 745, Stebler v. Riverside Heights Orange Growers' Ass'n (C. C. A.) 214 F. 550, or Rip Van Winkle Wall Bed Co. v. Murphy Wall Bed Co. (C. C. A.) 1 F.(2d) 673, the three cases relied upon by defendants, can be construed as authorizing such procedure. As to the merits, plaintiffs do not contend that the models "Tiffany" and "Universal" fall within the scope of the patent, and they may therefore be passed without comment. The "Ambassador," we have no hesitancy in finding, is an infringement. In form, appearance, and functions it is identical with the plaintiffs' receptacle. The case is complete in itself, and to it is detachably applied an envelop cover with metallic stiffening boards. The three elements are located as in plaintiffs' device, co-operate in substantially the same manner, and collectively function to accomplish substantially the same result. In practice each device is provided with a gilt piece applied in a manner to simulate gilt book edges and secured by folding one rim thereof over the turned-up edge and the other under the bottom of the receptacle. This latter rim is made wider in defendants' device, and thus in a sense constitutes a partial subsidiary case side or bottom. In both devices the book form cover is detachably secured to the case by means of tongues stamped from the stiffening boards, which in plaintiffs' device are inserted through slots in the bottom and top sides of the case, and clinched. In defendants' device it is secured to the top side, not by inserting the tongues through complete slots, but by passing them through and clinching them over grooves, or half-slots in the up-turned edge of the lid, and to the bottom by clinching them after passing them through slots in the subsidiary side afforded by the extended edge of the gilt piece. These differences are thought to be nothing more than mechanical expedients intended to conceal but ineffective to destroy the essential identity of the two devices, and the attempted avoidance of the patent claim is colorable only. The contention made by defendants that in their model the envelop cover is not detachable is wholly untenable. True, plaintiffs' invention is not primary, but their patent cannot be rendered worthless by a mere evasion of the exact letter thereof through slight and unimportant modifications of the essential elements.

In section 359 of Walker on Patents (5th Ed.), the learned author says: "Primary inventions are entitled to a somewhat looser application of this definition of an equivalent than those inventions which are secondary. But a patentee is not to be denied the benefit of the doctrine of equivalents to the extent necessary to protect his actual invention, although the invention may be a narrow one. A fair statement of the rule is that 'the range of equivalents covered by the patent corresponds with the character of the invention, and includes all forms which embody the substance of the invention, and by like mechanical co-operation effect substantially the same result.' "

And in Butler v. Burch Plow Co., 23 F. (2d) 15, we said:

"Unquestionably there is some difference in the structure of the machines, but we think there is no difference in principle. We look more to the substance of things than their forms.

" 'Where a combination patent marks a distinct advance in the art to which it relates, as does the appellant's invention

here, the term "mechanical equivalent" should have a reasonably broad and generous interpretation, and protection against the use of mechanical equivalents in a combination patent is governed by the same rules as patents for other inventions. Imhaeuser v. Buerk, 101 U. S. 647, 25 L. Ed. 945.' * * *

" 'Defendants therefore cannot escape infringement by adding to or taking from the patented device by changing its form or even by making it somewhat more or less efficient, while they retain its principle and mode of operation and attain its results by the use of the same or equivalent mechanical means. Lourie v. Lenhart, 130 F. 122, 64 C. C. A. 456.' "

Whether by the slight changes defendants' device is rendered less attractive or more attractive to the public we need not determine. It is sufficient to say that it embodies plaintiffs' invention.

Particularly referring to claim 6 of the patent, in our original opinion we held that it was valid and that the limits of plaintiffs' rights were thereby fairly defined, adding that, "in so far as the other claims may be construed to be of broader scope they are held to be void." The general language has given rise to some controversy respecting its effect upon the other claims, and we are asked not to modify but specifically to construe it, and perhaps to avoid further uncertainty and embarrassment we should give it consideration. At the first hearing plaintiffs did not contend that claims 4 and 7 had been infringed, and hence they were not involved. Claims 2 and 5 do not call for a detachable cover, and though claims 1 and 3 specify detachability they contain no suggestion of means or method for securing the cover to the case. In view of the prior art we are inclined to think they are too broad to have validity. Not by fair construction, but only by reading into them limitations which they neither express nor imply, can they be brought within the range of claim 6. While the question is not free from doubt, we are therefore constrained to the view that under our original decision they must be held to be void.

Accordingly, the decree appealed from will be reversed, and the cause remanded, with directions so to modify the interlocutory decree that it will declare the invalidity of claims 1, 2, 3, and 5, and make it clear that claims 4 and 7 were not in issue.

It should be added that in view of the fact that plaintiffs do not contend that the "Tiffany" and the "Universal" models are infringements, that upon the hearing before the master defendants impliedly conceded that one of the four models they had been marketing was an infringement, and that under the conclusion we have reached the "Ambassador" also is an infringement, we do not think the record shows any clear ground for granting defendants relief against alleged unfair representations by plaintiffs to defendants' customers. Of course, we do not thus intimate that plaintiffs have any license to make such representations.

Costs to appellants.