## ZELL v. BANKERS' UTILITIES CO., Inc., et al.

### No. 7348.

Circuit Court of Appeals, Ninth Circuit.

April 15, 1935.

Chas. E. Townsend and Wm. A. Loftus, both of San Francisco, Cal., and C. P. Goepel, of New York City (Leo J. Linder and Albert P. Singman, both of New York City, of counsel), for appellant.

Roy Daily and Hugh McKevitt, both of San Francisco, Cal., for appellees.

Before WILBUR and GARRECHT, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

This is the fifth time that the patent in suit has been before this court. Our previous decisions in this litigation are reported in Bankers' Utilities Co. v. Pacific Nat. Bank, 18 F.(2d) 16; Id., 22 F.(2d) 680; Id., 32 F.(2d) 105, and Bankers' Utilities Co. v. National Bank Supply Co., 53 F.(2d) 432.

The present appeal is from a final decree adjudging the appellant to be an infringer and to be liable for profits and accounting costs, and there is also an attempted appeal from an order denying a motion to resettle the final decree, so as to eliminate therefrom all reference to the appellant personally. The final decree also runs against two corporate defendants, which, however, have not appealed.

Action was originally brought by the appellees against the Pacific National Bank for infringement of Patent No. 1,460,716. The National Bank Supply Company, Inc., intervened, and thereafter this court, on March 18, 1927, reversed the decree of the District Court and held the defendant and the defendant-intervener to have infringed the appellees' patent. The court below entered an interlocutory decree, pursuant to the mandate of this court, appointing a special master to take and state the damages and profits realized by the defendants.

During the course of the accounting proceedings, an appearance was filed by V. D. Borst, of New York, as attorney for David H. Zell, Inc., and for appellant, which appearance, after the entitlement of the court and cause, reads as follows:

"Now come David H. Zell, Inc., a corporation organized and existing under and by virtue of the laws of the State of New York, and David H. Zell personally, by their duly employed and authorized attorney, Victor D. Borst, of 41 Park Row, New York, N. Y., and enter their appearance herein as being the real parties defendants-intervenors, who openly and avowedly contributed to and conducted the defense of the National Bank Supply Company, Inc., above named, and with whom priority exists.

"This appearance is to be considered a general appearance for each, every and all purposes necessary for a full and final settlement and determination of the issues in said action and is to be considered a consent to the jurisdiction of the above entitled court to enter any and all judgments, orders or decrees, to finally settle and determine said action, and said defendants-intervenors, David H. Zell, Inc., and David H. Zell further waive any and all legal or equitable objections they may have to the jurisdiction of said court in this action.

"Victor D. Borst,
"Attorney for David H. Zell, Inc.,
and David H. Zell."

"State of New York, County of New York—ss.:

"David H. Zell, being duly sworn, deposes and says that he is the president of David H. Zell, Inc. and that pursuant to a resolution of the Board of Directors of that company he has authorized Victor D. Borst, Esq., of 41 Park Row, New York, N. Y., as attorney for that company to enter the above appearance, and that he has also authorized the said attorney to enter the above appearance for him individually.

"David H. Zell, Inc.,
"By David H. Zell, Pres.
"David H. Zell.

"Sworn and subscribed to before me this 13th day of January, 1928.
"(Notarial Seal)      Ethel Vallin,
"Notary Public. * * *."

Indorsed: "Filed Jan. 28, 1928."

Appellant contends that this general appearance is "a nullity," not only because it was an appearance by one not a party, but because the appearance was made by an attorney who is not admitted to practice in this court or in the court below, and therefore is not authorized to enter an appearance for a party.

Subsequently a motion was made by the defendants-interveners, but not by the appellant, for an order defining the scope of the injunction previously granted pursuant to the mandate of this court, in so far as certain "modified" or "new structures" of the defendants-interveners were concerned. In Bankers' Utilities Co. v. Pacific Nat. Bank, 32 F.(2d) 105, this court held that one of these "modified" or new structures constituted an infringement of the appellees' patent.

The plaintiffs-appellees waived damages and royalties, and, in the words of the special master, "we are now only concerned with the profits resulting from the manu-

facture and sale of the infringing book form savings banks."

The special master, on August 10, 1931, filed his draft report, finding: (1) That the appellees should have judgment "against David H. Zell, Inc., in the sum of $8,703.-29, this amount being the net profits made by this defendant during the infringing period; and (2) that plaintiffs should have judgment against National Bank Supply Co., Inc. in the sum of $243.73, this amount being the net profits made by this defendant during the period of its infringing activities." On November 4, 1931, the special master filed a "supplemental report," modifying the draft report in certain respects, but not disturbing his original finding that the appellees should have judgment for profits realized by the two corporate defendants. No finding was made by the special master as to the recovery of any profits from the appellant, nor was any proof made as to the recovery of any profits from him. On May 26, 1933, the court below notified the parties that the decree should also run against the appellant personally. Thereafter, on June 23, 1933, a final decree was made, adjudging the appellant, personally, inter alios, to be an infringer, adjudging the appellees to be entitled to recover of the appellant personally, inter alios, accounting costs in the sum of $3,147.26, and that the appellees further recover of the appellant the sum of $12,-021.75 and $243.73 as "profits received by the said defendant-intervenors."

A motion was thereafter made to resettle the final decree by eliminating all reference therein to the appellant on the ground that the decree did not conform to the pleadings, that the appellant was not a party to the suit, that there was no proof of the receipt of any profits by the appellant personally, and on other grounds. The motion was denied.

Appellant's petition for appeal recites that he feels "himself aggrieved" only by the final decree of June 23, 1933, and makes no mention of the denial of the motion to "recall and resettle," nor does the order allowing the appeal contain any such mention.

The assignments allege error on the part of the court below in decreeing that the appellant personally should be held liable with others for the profits made by the corporate defendants and also for one-half of the costs of the accounting, in that it is asserted that such decree was contrary to the findings of the special master and "the law and the undisputed facts herein." Error is also assigned that the court was without jurisdiction over the appellant personally, and, finally, that under the disclaimer statutes, 35 USCA §§ 65 and 71, the appellees were not entitled to recoveries for costs. As to recoveries for profits, the assignments of error do not specifically refer to the disclaimer statutes, but merely allege that the court's award of such profits to the appellees "is contrary to the findings of the Special Master and is contrary to the law and the facts." In his brief, however, appellant specifically relies upon the disclaimer statutes in attacking the court's award of profits to the appellees. The appellant further asserts that the delay of appellees in filing a disclaimer in the case at bar was unreasonable, "and that the patent is accordingly void."

The appellees have filed a motion to dismiss "the above entitled action" because the decree was entered on June 23, 1933, and said term of court expired on the tenth or second Monday of July following; and the motion to recall and resettle the final decree was not filed until September 15, 1933." Appellees, however, concede that the final decree is "left in the transcript of record before this Court for review." Since that decree recites that it runs against the appellant, "David H. Zell, personally," and the assignments specifically allege error on this ground as to the award of profits, and generally as to the award of costs, the question of the alleged error in holding the appellant personally liable, either for profits or for costs, is properly before this court. Furthermore, as to the award of costs, both of suit and for one-half of the expenses of accounting, the assignments set out error on the ground that "the court has no power to award costs to a plaintiff where a disclaimer is filed since the commencement of the suit."

Accordingly, the motion to dismiss is denied.

Quoting sections 4917 and 4922 of the Revised Statutes (35 USCA §§ 65 and 71), the appellant contends that the final decree "was erroneous in that it awarded profits to one who had failed to seasonably file a disclaimer and in that it awarded costs to one who failed to file a disclaimer before the commencement of this action."

We need not here detail the grounds upon which the appellant bases his argument that appellees were under a duty to

file any disclaimer whatsoever. The defense that the patentee has failed seasonably to disclaim that part of his patent which has been declared void must be specifically pleaded in the answer. This the appellant failed to do. In Burden v. Corning, 4 Fed. Cas. 701, 710, 711, No. 2,143, 2 Fish. Pat. Cas. 498, a leading case on the subject, the court said:

"The defendant's answer does not set up the defense of unreasonable neglect or delay to file a disclaimer of the third claim of the plaintiff's patent, and, as this defense involves a question of fact, it cannot be made under the present pleadings."

See, also, Worden v. Searls (C. C.) 21 F. 406, 408; 1 Walker on Patents (6th Ed.) §§ 490, 624, 644, pp. 583, 719, 735.

As the question of the validity of the judgment, in so far as it was entered against the appellant personally, may be determined upon other grounds, we will not enter into a consideration of the question raised that the court was without jurisdiction over the appellant personally because he had not intervened in the action and because Victor D. Borst was not an attorney authorized to practice before the court below, and, hence, could not enter a valid appearance for appellant.

█ In the decision in Bankers' Utilities Co. v. Pacific Nat. Bank, 32 F.(2d) 105, 108, this court reversed the decree, and remanded the cause "with directions so to modify the interlocutory decree that it will declare the invalidity of claims 1, 2, 3, and 5, and make it clear that claims 4 and 7 were not in issue." An examination of that interlocutory decree discloses that it authorized no recovery from the appellant herein personally, but only from the Pacific National Bank and the National Bank Supply Company, Inc. The inclusion of the appellant in the final decree in the present appeal, therefore, was without authority from this court.

█ We perceive no equitable ground upon which the decree should run against the appellant as well as against the corporate defendants, which have not appealed. Although the special master found that the appellant is the "sole and exclusive owner" of all the stock of the two corporations, no reason is shown in the record why the doctrine of separateness of legal entities as between a corporation and its stockholders should not apply. In 14 C. J. § 5, pp. 52, 53, the doctrine is thus stated:

"On the creation of a corporation, as we have seen, the individuality of the corporators or members is merged in the corporate body and the corporation becomes in law, and for most purposes, a legal entity or artificial person entirely distinct from its members and its officers, so that its acts through its members as a corporate body, or through its officers or agents, are regarded as the acts of this legal entity or artificial person as distinguished from the members who compose it, and the property or rights acquired, or the liabilities incurred, by it are regarded as its property, rights, and liabilities as such distinct legal entity, this doctrine applies even in the case of a corporation sole, or a corporation aggregate whose shares are all owned by one or a few persons.

"And the rule applies as well where the stock of a corporation is owned partly or entirely by another corporation, as where it is owned by natural persons, so there is no identity between a corporation owning practically all the stock in another corporation and the latter corporation."

In the instant case the master's report concludes with the following summary:

"(1) That plaintiffs should have judgment against David H. Zell, Inc., in the sum of $8,703.29, this amount being the net profits made by this defendant during the infringing period; and (2) that plaintiffs should have judgment against National Bank Supply Co., Inc., in the sum of $243.73, this amount being the net profits made by this defendant during the period of its infringing activities."

No mention is made of any judgment against the appellant personally. The master's report clearly shows that the infringing was done by the corporate defendants, and that the accounting was determined as to them:

"It appears from the record that David H. Zell, Inc., first commenced manufacturing the original 'Ambassador' bank of September 1st, 1927. This particular Ambassador was before the Circuit Court, and was held to infringe Claim 6 of the Greer patent. * * *

"It appears from the testimony and records that one of the defendants-intervenors, National Bank Supply Co., Inc., commenced selling Ambassador banks on February 1, 1928, and discontinued said operations on May 3, 1929.

"The present accounting period of David H. Zell, Inc., is from September 1, 1927

to May 3, 1929; and for National Bank Supply Co., Inc., from February 1, 1928 to May 3, 1929."

Without elaborating the point further, it may be said that a study of the master's report shows that he considered the accounting and the infringing of the two corporate defendants only.

It is, of course, axiomatic that the theory of the separate entity of corporation and stockholders will not be permitted by the courts to act as a cloak for fraud, or to prevent recourse in equity against the stockholders where the infringing corporation is insolvent. The record does not bear out any charge of fraud against the appellant. In their brief appellees make the statement that "In the record on the accounting, it was shown before the Master, that Mr. Zell uses corporations as a blind to conduct business and endeavors to escape personal liability," and that "At the time of taking the accounting, he was operating seven different corporations," etc. As to the first statement, the appellees refer to no page in the record, nor have we been able to find any support for the charge of a "blind." As to the assertion that the appellant operated seven corporations, no reference to the record is given. In any event, the mere ownership or operation of a number of corporations, without more, is not a badge of fraud.

On the other hand, the master's report is replete with statements as to the "gratifying" "response" made by the defendants-interveners "to the many requests by plaintiffs' attorney for the production of various books, records, and documents pertaining to the present accounting"; as to "a ready and willing cooperation by both the principals and their employees" "in all important matters"; as to the "thoroughness" of the defendants' analysis of the general ledger accounts; as to "reasonable deductions" requested by the defendants; as to the "considerable care" and correctness in the preparation of the defendants' exhibit with regard to the data appearing in the salesmen's records and orders; as to an expense "incurred in good faith by defendant;" as to the defendant's "fair" and "equitable" manner in dealing with the apportionment of salaries to the infringing banks; as to the "reasonableness" of the allowance claimed by the defendant Zell Company for depreciation, etc. While all these evidences of candor, fairness, and reasonableness are not in themselves proofs of innocence, they are assuredly not suggestive of fraud or double-dealing.

The appellees, however, contend that "In the Master's report * * * it is undisputed that Mr. Zell actually received $29,333.34 of the corporation unlawfully, and this amount of money which he received is more than the amount of money allowed in the judgment." What the master's report actually shows is that Mr. Zell did receive the above amount as a salary; that "the salaries paid him would ordinarily be considered proper and reasonable," in view of the services performed by him; but that, "Notwithstanding the fact that the amount of salary paid to David H. Zell was reasonable and fair," the defendant's claim "that this amount is apportionable on the basis of sales in the same manner as any other overhead item which benefits both the infringing and non-infringing devices," should not be allowed. But the refusal to allow the "deduction" claimed by the defendant was not because of any fraud or any "unlawful" dealing on the part of either of the corporations or of the appellant, but because Mr. Zell, being "the guiding influence in the activities of the defendant David H. Zell, Inc.," "in truth and in fact alone would gain by deductions of salary paid to him."

The master's refusal to allow the corporate defendant this deduction, however, is far from a finding of fraud or illegality. It merely means that, because of Mr. Zell's ownership of the corporation, the Zell Company could not claim the amount of salary paid to him as a deduction. There is no suggestion that the amount paid to him was improper, or should be returned by him. The master was there considering a mere matter of accounting, and did not intend to make any finding as to fraud. As a result of his ruling, Mr. Zell was allowed to keep the salary thus received, but the corporate defendant was not permitted to claim it as a deduction.

Finally, appellees contend that the two corporate defendants "are now practically insolvent." The appellees, however, concede that "there was nothing in the record relative to solvency or insolvency of the said (Zell) corporation." In support of their statement as to the insolvency of both the defendant companies, however, appellees refer to an Appendix to their brief, in which are set out certain purported reports by Dun & Bradstreet, Inc. These are not in evidence, and clearly should not be considered by us.

Neither fraud nor insolvency is to be presumed. 22 C. J. 145, § 78, note 35, and 147, § 82. There is no affirmative showing in the record herein as to either fraud or insolvency.

As to the proposition that the sole stockholder of a corporation not shown to be insolvent should not be held liable for the latter's infringing profits, we are impressed by the following reasoning found in 1 Walker on Patents, § 460, at page 562:

"As long as a corporation is solvent enough to pay over to a patentee, all the profits which it made from its infringement of the patent of that patentee, there is no good reason for a court of equity to go further in search of money for that purpose. There is, therefore, no good reason for such a court taking jurisdiction of any officer, director, or stockholder of the corporation, with a view of tracing into his hands, the moneys needed to satisfy the patentee's claim for infringer's profits. It follows that an officer, director or stockholder in a corporation is not liable to a recovery of infringer's profits on account of any infringement committed by the corporation; except where the corporation is so insolvent as to be unable to itself respond to an execution for the amount of those profits."

In the instant case no proper showing has been made that the corporations themselves are unable to respond to an execution for the amount of their profits.

Accordingly, so far as it runs against the appellant, the decree is reversed, and remanded to the trial court for such further proceedings as are not inconsistent with this opinion. In all other respects the decree is affirmed.